# IN THE SUPREME COURT OF IOWA

No. 13 / 04-1544

Filed July 21, 2006

**JAMES PARISH II,** Individually and as Parent and Next Friend of JAMES PARISH III, a Minor Child,

Appellant,

vs.

ICON HEALTH & FITNESS, INC.

Defendant,

**JUMPKING, INC.**,

Appellee.

---

Appeal from the Iowa District Court for Linn County, Thomas L. Koehler, Judge.

Appeal by plaintiff from summary judgment in favor of manufacturer in product liability case. **AFFIRMED.**

Martin A. Diaz, Iowa City, for appellant.

Michael D. Ensley of Hanson, Bjork & Russell, L.L.P., Des Moines, for appellee.

**LARSON, Justice.**

James Parish was severely injured while using a trampoline manufactured by the defendant, Jumpking, Inc. Parish sued Jumpking on theories of defective design of the trampoline and negligence in failing to warn of the danger in using it. The defendant moved for summary judgment, which was granted, and the plaintiff appealed. We affirm.

## I. *Facts and Prior Proceedings.*

In June of 1999, Delbert Parish (the plaintiff's brother) and Shelley Tatro purchased a Jumpking fourteen-foot trampoline for use in their backyard. They set up the trampoline, and Delbert tried it out by attempting a somersault. He nearly fell off the trampoline, prompting Delbert and Shelley to purchase a "fun ring"—a netlike enclosure with one entry point onto the trampoline. While the plaintiff was visiting his brother on September 11, 1999, he attempted to do a back somersault on the trampoline, but he landed on his head and was rendered a quadriplegic. In August 2001 Parish filed suit, on his own behalf and on behalf of his minor son, against Jumpking, as designer and manufacturer of the trampoline and its enclosure.[1]

## II. *The Issues.*

The district court entered summary judgment against the plaintiff on all claims, and he argues on appeal that this was error because there were genuine issues of material fact on his design-defect claim and on the adequacy of Jumpking's warnings. He also contends that the "open and

---

[1]Parish alleges that ICON and Jumpking are affiliated in business with the design, manufacture, advertising, sale, and distribution of trampolines under the name of Jumpking and enclosures under the name of "Fun Ring." Jumpking denies that ICON is in the business of manufacturing or designing trampolines and states that ICON was not involved in the manufacture or design of the trampoline or trampoline enclosure involved in the present incident. In view of our disposition of the case, we need not determine the extent of ICON's involvement. Parish also sued Delbert Parish and Shelley Tatro, but those claims were dismissed prior to the summary judgment.

obvious" defense is not applicable to a design-defect case, and in any event, there was an issue of material fact as to its application here.[2]

### III. *Principles of Review.*

We review the granting of a motion for summary judgment for correction of errors at law. *Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000). Summary judgment is appropriate when there is no genuine issue of material fact, and the burden of showing the lack of a genuine issue is on the moving party. *Fischer v. Unipac Serv. Corp.*, 519 N.W.2d 793, 796 (Iowa 1994). A fact is material if it will affect the outcome of the suit, given the applicable law. *Id.* An issue of fact is "genuine" if the evidence is such that a reasonable finder of fact could return a verdict or decision for the nonmoving party. *Junkins v. Branstad*, 421 N.W.2d 130, 132 (Iowa 1988). The evidence is viewed in the light most favorable to the nonmoving party. *Fischer*, 519 N.W.2d at 796. If the moving party can show that the nonmoving party has no evidence to support a determinative element of that party's claim, the moving party will prevail in summary judgment. The nonmoving party in a summary judgment motion "may not rest upon the mere allegations or denials in the pleadings." Iowa R. Civ. P. 1.981(5). In a nutshell, the summary judgment procedure does not contemplate that a district court may try issues of fact, but must determine only whether there are issues to be tried.

---

[2]The plaintiff states in a footnote that, although he argues design defect, the facts alleged would fit manufacturing defect as well and that he merely describes them collectively as a design defect "without waiving the manufacturing defect claim." Design and manufacturing defects are, of course, significantly different, and the plaintiff argues only the design-defect ground of liability. He has, therefore, waived any argument concerning a manufacturing defect. *See* Iowa R. App. P. 6.14(1)(*c*) ("Failure in the brief to state, to argue or to cite authority in support of an issue may be deemed [a] waiver of that issue.").

## IV. *The Defective Design Claim.*

In *Wright v. Brooke Group Ltd.*, 652 N.W.2d 159 (Iowa 2002), we adopted sections 1 and 2 of the Restatement (Third) of Torts: Products Liability [hereinafter Restatement]. Section 2 of the Restatement recognizes three types of product defect:

> A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product:
>
> . . . .
>
> (b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe[.]

The plaintiff's first argument is that the district court erred in granting summary judgment on his design-defect claim under section 2(b). Under a design-defect claim, a plaintiff is essentially arguing that, even though the product meets the manufacturer's design specifications, the specifications themselves create unreasonable risks. To succeed under section 2(b), a plaintiff must ordinarily show the existence of a reasonable alternative design, *Wright*, 652 N.W.2d at 169, and that this design would, at a reasonable cost, have reduced the foreseeabilty of harm posed by the product. Restatement § 2 cmt. *d*.

The Restatement recognizes exceptions to the requirement of a reasonable alternative design, but the plaintiff relies on only one: that the design was "manifestly unreasonable" under Restatement section 2(b) comment *e*. Under that comment,

> the designs of some products are so manifestly unreasonable, in that they have low social utility and high degree of danger, that liability should attach even absent proof of a reasonable alternative design.

The plaintiff concedes that he has not offered an alternative design; rather, he argues a trampoline is so inherently dangerous that a reasonable design alternative is not available. He contends there is no safe way to use a trampoline in a backyard, and it must be used only by properly trained and qualified participants under supervision.

The Restatement provides this illustration of a manifestly unreasonable product under comment *e*:

> ABC Co. manufactures novelty items. One item, an exploding cigar, is made to explode with a loud bang and the emission of smoke. Robert purchased the exploding cigar and presented it to his boss, Jack, at a birthday party arranged for him at the office. Jack lit the cigar. When it exploded, the heat from the explosion lit Jack's beard on fire causing serious burns to his face. If a court were to recognize the rule identified in this Comment, the finder of fact might find ABC liable for the defective design of the exploding cigar even if no reasonable alterative design was available that would provide similar prank characteristics. The utility of the exploding cigar is so low and the risk of injury is so high as to warrant a conclusion that the cigar is defective and should not have been marketed at all.

Restatement § 2(b) cmt. *e*, illus. 5.

Application of the "manifestly unreasonable" exception presents an issue of first impression in Iowa. However, the wording of section 2(b) and virtually all commentary on it suggest that this exception should be sparingly applied. In fact, such exceptions to the requirement of a reasonable alternative design were "grudgingly accepted by the Reporters," Keith C. Miller, *Myth Surrenders to Reality: Design Defect Litigation in Iowa*, 51 Drake L. Rev. 549, 564 (2003), suggesting that the drafters did not intend for there to be any exceptions to this requirement. One of the reporters to the Restatement agrees:

> [B]ear in mind that our comment *e* talks about extremely dangerous products with very low social utility. It substitutes for the qualitative problem in the general design area, a kind of quantitative solution. We admit that there may be times, and I

think they'd be rare, probably non-existent, when a product might come to court, to you, that was so bad, so very outloud bad, so very antisocial, that it would tug against the very grain of the way you were raised.

James A. Henderson, Jr., *The Habush Amendment: Section 2(b) comment* e, 8—Fall Kan. J.L. & Pub. Pol'y 86, 86 (1998).

Suits involving common and widely distributed products are more likely than others to require the showing of a reasonable alternative. According to the Restatement,

> [c]ommon and widely distributed products such as alcoholic beverages, firearms, and above-ground swimming pools may be found to be defective only upon proof of [a reasonable alternative design]. If such products are [] sold without reasonable warnings as to their danger . . . then liability under §§ 1 and 2 may attach. Absent proof of defect under those Sections, however, courts have not imposed liability for categories of products that are generally available and widely consumed, even if they pose substantial risks of harm.

Restatement § 2(b) cmt. *d.*

While comment *e* recognizes the possibility that egregiously dangerous products might be held defective for that reason alone, the Restatement has noted that "a clear majority of courts that have faced the issue have refused so to hold." Restatement § 2, *American Case Law and Commentary on Issues Related to Design-Based Liability*, at 87. In this commentary, the Restatement discussed several cases imposing liability under comment *e* but observed that "[e]ach of these judicial attempts at imposing such liability have either been overturned or sharply curtailed by legislation." *Id.* at 89.

Under our summary judgment rules,

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in the pleadings, but the response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue*

*for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered.*

Iowa R. Civ. P. 1.981(5) (emphasis added). As previously noted, a genuine issue of fact is presented if a reasonable fact finder could return a verdict or decision for the nonmoving party based upon those facts. *Junkins*, 421 N.W.2d at 132. By adopting section 2 of the Restatement in *Wright*, we also adopted comment *e*. In the present case, the issue is whether a reasonable fact finder could conclude the trampoline was manifestly unreasonable in its design within the meaning of comment *e* as interpreted by the commentary surrounding it and the cases applying it.

In cases involving common and widely distributed products,

courts generally have concluded that legislatures[3] and administrative agencies can, more appropriately than courts, consider the desirability of commercial distribution of some categories of widely used and consumed, but nevertheless dangerous, products.

Restatement § 2(b) cmt. *d*.

It is undisputed that trampolines are common and widely distributed products. In fact, the evidence showed approximately fourteen million people use them. Even data produced by the plaintiff in his resistance to summary judgment showed that in 2002 only 2.1% of trampolines were associated with injuries, and only one-half of one percent of jumpers were injured. The Consumer Product Safety Commission, based on 1997 and 1998 injury data, concluded trampolines ranked twelfth among recreational

---

[3]New Jersey recognizes by statute an action for an egregiously dangerous product. However, it has done so in a very limited manner. The official commentary by the New Jersey Senate Judiciary Committee indicates just how limited that exception was intended to be. The commentary notes: "It is intended that such a finding [under the exception] would be made only in genuinely extraordinary cases—for example, in the case of a deadly toy marketed for use by the young children, or of a product marketed for use in dangerous criminal activities." N.J. Senate Judiciary Committee Statement, No. 2805-L. 1987, cl. 197.

use products in terms of injuries. They rated below such common activities as basketball, bicycle riding, football, soccer, and skating.

The benefits of trampolining include use in cardiovascular workouts and other medical treatments, including "bouncing" therapy for children with cystic fibrosis. Trampolining obviously provides valuable exercise and entertainment.

We conclude that the plaintiff has failed to generate a genuine issue of fact sufficient to except this product from the alternative-design requirement of section 2(b), and the plaintiff's design-defect claim under that section must therefore be rejected.

## V. *The Warnings.*

The plaintiff also claims the trampoline did not incorporate adequate warnings and that a genuine issue of fact was generated on that issue.

Under the Restatement, a product

> is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

Restatement § 2(c).

The trampoline in this case, and its surrounding fun ring, together provide numerous warnings. Three warnings are placed permanently on the pad of the trampoline and advise the user:

**WARNING**

Do not land on head or neck.

Paralysis or death can result, even if you land in the middle of the trampoline mat (bed).

To reduce the chance of landing on your head or neck, do not do somersaults (flips).

Only one person at a time on trampoline.

> Multiple jumpers increase the chances of loss of control, collision, and falling off.
>
> This can result in broken head, neck, back, or leg.
>
> This trampoline is not recommended for children under 6 years of age.

These warnings also include nationally recognized warning symbols cautioning against those activities. During manufacture, Jumpking also places one warning on each of the eight legs of the trampoline, and the design is such that the only way to assemble the trampoline is to have these warnings facing out so they are visible to the user. Jumpking further manufactures two printed (nonpictorial) warnings that are sewn onto the trampoline bed itself. It also provides a warning placard for the owner to affix to the trampoline that contains both the pictorial warning and the language regarding safe use of the trampoline, and it provides an owner's manual that contains the warnings as found on the trampoline as well as additional warnings regarding supervision and education. It is undisputed that these warnings exceed the warnings required by the American Society for Testing and Material (ASTM).

Warnings are also provided with the fun ring. Jumpking provides eight warning stickers to be placed on the legs of the fun ring during assembly, and Shelley Tatro recalls installing them as directed. Jumpking provided extra warnings on the fun ring because it was aware that the fun ring may partially cover warnings on the legs of the trampoline. It also provides a warning placard with the fun ring to be placed at the door of the fun ring containing the pictorial warnings and additional language required by the ASTM. The fun ring comes with a separate owner's manual that provides additional warnings.

The Restatement recognizes that users must pay some attention for their own safety:

> Society does not benefit from products that are excessively safe—for example, automobiles designed with maximum speeds of 20 miles per hour—any more than it benefits from products that are too risky. Society benefits most when the right, or optimal, amount of product safety is achieved. *From a fairness perspective, requiring individual users and consumers to bear appropriate responsibility for proper product use prevents careless users and consumers from being subsidized by more careful users and consumers, when the former are paid damages out of funds to which the latter are forced to contribute through higher product prices.*

Restatement § 2 cmt. *a* (emphasis added).

In this case, it is undisputed that the three warnings affixed to the pad of the trampoline and the placards that came with both the trampoline and the fun ring warned against the specific conduct in which the plaintiff was engaged at the time of his injury, i.e., attempting somersaults or flips. We conclude that a reasonable fact finder could not conclude that the defendant's warnings were inadequate, and we affirm the district court's summary judgment on that claim.

Because we find summary judgment was properly ordered on the grounds discussed, we do not address the plaintiff's "open and obvious" argument.

**AFFIRMED.**