Austin **ROCK,** Plaintiff,

v.

John Chadwick **SMITH;** U–Haul Co. of Indiana, Inc.; U–Haul International, Inc.; and State Farm Mutual Automobile Insurance Company, Defendants.

No. 3:10–cv–00163–JEG.

United States District Court,
S.D. Iowa,
Davenport Division.

July 15, 2013.

James E. Shipman, Robert E. Konchar, Simmons Perrine Moyer & Bergman PLC, Cedar Rapids, IA, Robert H. Dekock, Dekock Law Office PC, Muscatine, IA, for Plaintiff.

Benjamin Michael Weston, Lederer Weston Craig PLC, West Des Moines, IA,

Kimberly K. Hardeman, Lederer Weston Craig PLC, Cedar Rapids, IA, for Defendants.

## ORDER

JAMES E. GRITZNER, Chief Judge.

This matter comes before the Court on the Motion for Summary Judgment brought by Defendants U–Haul Co. of Indiana, Inc. and U–Haul International, Inc. (collectively, U–Haul). Plaintiff Austin Rock (Rock) resists, and State Farm Mutual Automobile Insurance Company (State Farm) joins that resistance. The Court held a hearing on the Motion on May 10, 2013. Attorneys James E. Shipman and Robert E. Konchar appeared on behalf of Rock; attorney Robert Park appeared on behalf of Smith; attorney Kimberly Hardeman appeared on behalf of State Farm; and attorneys Anthony Kirwin and Randall Pattee appeared in person on behalf of U–Haul, with attorney William Miller appearing by phone. The matter is fully submitted and ready for disposition.

## I. BACKGROUND

The following facts are either not in dispute or taken in the light most favorable to Rock as the nonmovant. *See Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 739 (8th Cir.2009). Smith rented a U–Haul truck and a tow dolly from a U–Haul store in Indianapolis, Indiana, on January 25, 2009. A tow dolly is a two-wheeled piece of equipment that attaches to a towing vehicle and provides a platform where the front wheels of the vehicle-in-tow rest. The front wheels of the vehicle-in-tow are supposed to be secured to the tow dolly with straps equipped with ratchets, and the tow dolly also has security chains that are intended to connect the tow dolly to the vehicle-in-tow if that vehicle's wheels come off of the tow dolly. Smith

was moving from Indianapolis to California and planned to use the tow dolly to transport his Jeep. Smith drove the rented truck with the empty tow dolly attached to a friend's house where he loaded his Jeep onto the tow dolly. Smith testified that when he loaded his Jeep onto the tow dolly, he affixed the security chains on the tow dolly and checked the chains at each stop. Smith and a friend left Indianapolis for California on January 26. Smith had stopped two or three times for food or gas, and at each stop, including a stop thirty to forty miles east of the exit for West Branch, Iowa, Smith checked the tow dolly to make sure it was secure. The tow dolly and Jeep appeared to be secure each time. On Interstate 80, near the exit for West Branch, Smith watched in the mirror as his Jeep rolled off the tow dolly, traveled across the highway, and hit Rock's car as it traveled east, injuring Rock.

Rock filed a petition in the Iowa District Court for Johnson County on November 15, 2010, and U–Haul removed the case on December 21, 2010. Rock filed a First Amended Complaint (Amended Complaint) on April 19, 2012. The Amended Complaint alleges U–Haul provided a defective tow dolly and negligently failed to do the following: provide adequate training for its personnel, properly instruct and warn its customers regarding the proper use of the tow dolly, maintain the tow dolly, and adequately investigate the "national epidemic of accidents" resulting from vehicles detaching from tow dollies and take proper remedial action. Am. Compl. ¶¶ 17–18, ECF No. 74. U–Haul moved for summary judgment on November 16, 2012, claiming Rock was unable to produce evidence to support his claims and U–Haul was entitled to judgment as a matter of law.[1]

## II. DISCUSSION

### A. Jurisdiction

Jurisdiction in this case is based on diversity. Rock is a citizen of Iowa, Smith is a citizen of California, U–Haul of Indiana is an Indiana corporation with its principal place of business in Indiana, U–Haul International is a Nevada corporation with it principal place of business in Arizona, and State Farm is an Illinois corporation with its principal corporation in the state of Illinois. Complete diversity exists. Rock has alleged severe and disabling personal injuries, including brain and leg injuries that could exceed $75,000.00 as required by statute. 28 U.S.C. § 1332(a). Diversity jurisdiction is appropriate.

### B. Summary Judgment Standard

"Summary judgment is appropriate when the evidence presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Merriam v. Nat'l Union Fire Ins.*, 572 F.3d 579, 583 (8th Cir.2009). When considering a motion for summary judgment, the Court " 'must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.' " *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir.2009) (quoting *Carraher v. Target Corp.*, 503 F.3d 714, 716 (8th Cir.2007)). A summary judgment motion should be interpreted by the trial court to dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Therefore, the trial judge is not to weigh the evidence and determine the truth of the matter but rather to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

1. Smith has not filed any documents in connection with this motion.

242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

While the moving party must initially make a showing of the basis for its motion and the portions of the record that support the party's assertion that there is no issue of material fact, the moving party is not required by Rule 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548). When the moving party has carried its initial burden, the nonmoving party must proffer specific facts demonstrating the existence of a genuine issue for trial and may not rely on mere allegations. *Vaughn v. Roadway Express, Inc.*, 164 F.3d 1087, 1089 (8th Cir.1998) (citing *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548). The nonmoving party must make a satisfactory showing on every element of its case for which it has the burden of proof at trial. *Wilson v. Sw. Bell Tel. Co.*, 55 F.3d 399, 405 (8th Cir.1995); *see also Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "[T]o survive the defendant's motion, [the plaintiff] need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. It is thus the task of the trial court to "assess the adequacy of the non-movant['s] response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel*, 953 F.2d at 396 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

Against this disciplined legal analysis, the Court has examined and reexamined this unusual case as the essential facts intuitively suggest some flaw or misstep must have been involved for the Jeep to become free from the restraints on the dolly and collide with Rock's vehicle. This essential challenge for both counsel and the Court on the available record ultimately collides with the necessary legal analysis and whether there exists a material question of fact on the mechanics of the failure—what caused this incident.

## C. Product Defect Claims

The Iowa Supreme Court has adopted section 1 and 2 of Restatement (Third) of Torts: Products Liability (hereinafter Restatement). *Parish v. Jumpking, Inc.*, 719 N.W.2d 540, 543 (Iowa 2006) (citing *Wright v. Brooke Group Ltd.*, 652 N.W.2d 159 (Iowa 2002)). Under the Restatement,

A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warning. A product:

(a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;

(b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;

(c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of dis-

tribution, and the omission of the instructions or warnings renders the product not reasonably safe.

*Wright,* 652 N.W.2d at 168 (quoting Restatement § 2, at 14). The Court will apply these standards to determine whether Rock has produced sufficient evidence to survive summary judgment on his product defect claims. Rock claims that U–Haul's actions following the accident resulted in the spoliation of evidence, and, on that basis, summary judgment is inappropriate. As Rock and his expert witness rely heavily on the adverse inference created by spoliation, the Court will focus there as a point of departure.

## 1. A Spoliation Instruction in Rock's Product Defect Claim

Rock asserts that U–Haul's spoliation of the tow dolly entitles him to an adverse inference instruction in his product defect claims. Smith returned the tow dolly to a U–Haul store in Coralville, Iowa, on January 27, 2009, the day after the accident. Smith did not recall seeing any damage to the tow dolly when he returned it, and a U–Haul employee, Robert Hampton, inspected the tow dolly, found it was not damaged and returned it to service. The tow dolly was rented to another customer on January 30, 2009, and returned to another U–Haul dealer later that day; no incidents were reported following that

rental. The parties agree that at some point later on, the tow dolly was removed from service, but they disagree as to when that occurred.

■■■ Both parties cite Iowa case law when discussing whether spoliation occurred. However, the Eighth Circuit has recently concluded that "federal law applies to the imposition of sanctions for the spoliation of evidence." *Sherman v. Rinchem Co., Inc.,* 687 F.3d 996, 1006 (8th Cir.2012). "Under federal law, 'there must be a finding of *intentional destruction* indicating a desire to suppress the truth.'" *Id.* (quoting *Stevenson v. Union Pac. R.R. Co.,* 354 F.3d 739, 746 (8th Cir.2004)). An adverse inference instruction is not appropriate when evidence is lost or destroyed and the court is unable to determine the evidence is intentionally destroyed. *See id.; see also Stevenson,* 354 F.3d at 746–47 & n. 2.[2]

■■■ Rock has not provided any evidence that U–Haul intentionally destroyed evidence. Rock's brief articulates the ways in which U–Haul failed to preserve evidence and argues that U–Haul either knew or should have known that the tow dolly had been in a severe accident that would likely result in litigation and that U–Haul failed to follow its own procedures regarding equipment that has been in-

**2.** Rock cites to a federal court case which, at first blush, appears to articulate a negligence standard. In *Waitt v. Speed Control, Inc.,* No. C–00–4060, 2002 WL 1711817 (N.D.Iowa June 28, 2002), the court stated that one requirement of a sanction for spoliation is whether "the party against whom the sanction is sought knew or should have known that evidence would be relevant and should be preserved as evidence." *Id.* at *17. However, the court went on to state "[a]pplication of the spoliation doctrine 'must take into account the blameworthiness of the offending party.'" *Id.* (quoting *Anderson v. Nat'l R.R. Passenger Corp.,* 866 F.Supp. 937, 945 (E.D.Va.1994), *aff'd,* 74 F.3d 1230 (4th Cir.

1996)). The court then stated that "[m]ere negligence in losing or destroying records is not enough to warrant a sanction because it does not support an inference of consciousness of a weak case." *Waitt,* therefore, does not appear to support a conclusion that mere negligence in the destruction of evidence is sufficient to warrant a sanction for spoliation. Even if *Waitt* could reasonably be read to support a negligence standard, the above Eighth Circuit authority would control. Thus, at bottom, the Court need not and does not herein determine if any negligence occurred in the handling of the tow dolly post-accident.

volved in an accident. These arguments only articulate a negligence standard, which the Eighth Circuit has explicitly rejected as a basis for spoliation sanctions. *Stevenson,* 354 F.3d at 746–47; *see also U.S. v. Tyerman,* 701 F.3d 552, 561 (8th Cir.2012) ("[T]his court certainly rejected a spoliation instruction on the basis of mere negligence."). Rock has not cited any evidence U–Haul intentionally destroyed evidence, only that U–Haul was possibly careless in renting the tow dolly following an accident. Without evidence beyond mere negligence, an adverse inference based on the spoliation of evidence is not warranted.

### 2. Failure to Provide Adequate Instructions and Warnings

In his complaint, Rock alleged that U–Haul negligently failed to provided adequate user instructions and warnings to Smith. U–Haul claims that because Rock has not offered evidence that different instructions or warnings would have made towing a vehicle safer or would have prevented the subject accident, U–Haul is entitled to summary judgment on the inadequate warnings or instructions claim. Rock claims he has expert testimony that the instructions provided by U–Haul were subjective and ambiguous and that providing additional information about the consequences of failing to properly secure the vehicle on the tow dolly could have prevented the accident.

■ "Under the Restatement, 'a product is defective because of inadequate instructions or warnings when [1] the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and [2] the omission of the instructions or warnings renders the product not reasonably safe.'" *Parish,* 719 N.W.2d at 545–46

(quoting Restatement § 2(c)). "Factors to consider when assessing the adequacy of instructions or warnings are content and comprehensibility, intensity of expression, and the characteristics of expected user groups." *Junk v. Terminix Int'l Co. Ltd.,* No. 05–cv–0608, 2008 WL 5191865, at *6 (S.D.Iowa Nov. 3, 2008) (citing Restatement § 2, cmt. *h*(I)). "Instructions inform persons how to use and consume products safely. Warnings alert users and consumers to the existence and nature of product risks so that they can prevent harm either by appropriate conduct during use or consumption or by choosing not to use or consume." Restatement § 2 cmt. *I.*

■ Establishing liability for failure to instruct or warn also requires a plaintiff to establish that the lack of instructions or warnings caused the plaintiff harm. *See Wright v. Brooke Group Ltd.,* 652 N.W.2d 159, 168 (Iowa 2002) (quoting Restatement § 1) (noting that the Restatement requires the harm be "caused by the defect"); *see also Benedict v. Zimmer, Inc.,* 405 F.Supp.2d 1026, 1034 (N.D.Iowa 2005) (holding the element of causation is required to establish a failure to instruct or warn claim). "Iowa law does not categorically require expert testimony in claims for inadequate warnings or instructions." *Junk,* 2008 WL 5191865, at *6. However, expert testimony is required to establish causation where "the average juror needs the assistance of expert testimony to reach an intelligent decision about whether the foreseeable risks of harm posed by [a product] could have been reduced or avoided by the provision of reasonable instructions or warnings and, if so, whether an omission of instructions or warnings rendered the device not reasonably safe." *Benedict,* 405 F.Supp.2d at 1034. U–Haul claims that because Rock's expert cannot identify the cause of the accident, and

because he has no opinion about the adequacy of the warnings or instructions or evidence that different instructions would have prevented the subject accident, Rock's failure to instruct or warn claim must fail.

A decal found on the wheel cover of the tow dolly provided the only instruction Smith received on how to operate the tow dolly. This decal tells the user to read a user instruction booklet; however, Smith did not recall receiving any other materials or instructions on how to use the tow dolly. There are other decals on the tow dolly that provide various instructions and warnings on how to properly use the tow dolly. Rock claims these instructions are inadequate.

■ The tow dolly decal instructs the user to "[p]ull as much strap as possible (at least 6 inches) through the spool, maintain tension on the strap, then operate the ratchets until the straps are tight." Pl.'s App. 144. Smith testified that he read and understood this instruction. Fred Monick, Rock's expert, testified that he believed this instruction was inadequate because "tight" is subjective, and the user would not know how tight "tight" is. Monick Dep. 41, 51; Pl.'s App. 46, 54, ECF No. 102–2. However, Monick repeatedly stated that he was unable to say whether the straps being too lose caused the Jeep to disengage from the tow dolly. Monick would only state that he believed an instruction involving an objective measurement of tension on the straps would be easier to understand, not that it would have prevented the Jeep from disengaging. It is therefore impossible to say whether the failure to have an instruction that included an objective measurement of what

constituted "tight" caused the accident. While the instructions provided by U–Haul were intended for the general public, whether those instructions were adequate to ensure that the tow dolly straps would apply sufficient pressure to the Jeep tires so as to reasonably reduce the foreseeable risk that the vehicle would disengage during transport, as well as whether that was in fact the mechanism of failure, are technical issues beyond the common knowledge and understanding of jurors, therefore requiring expert testimony on these issues. *Junk,* 2008 WL 5191865, at *6. Expert testimony is required on these issues and is ultimately lacking in this record.[3]

Regarding warnings, Rock claims that the instruction decal did not contain information regarding potentially fatal consequences in the event the towed vehicle disengaged from the tow dolly. None of these decals contained the precise warning found in the instruction manual that "FAILURE TO FOLLOW THESE INSTRUCTION MAY RESULT IN DEATH, DISMEMBERMENT OR SERIOUS INJURY." User Instructions, App. 131, ECF No. 102–3. However, the tow dolly contained numerous other decals, one of which specifically warned of the danger of injury or death if the instructions were not followed. The user instruction manual warned the user to never tow a vehicle without properly installed tire straps and security chains, and a very similar warning that failing to attach the security chains and properly ratchet may result in separation between the towed vehicle and the tow dolly causing serious injury and death is found on another decal on the tow dolly.

---

**3.** Rock presents evidence of numerous other failures involving the tow dollies. *See Lovick v. Wil–Rich,* 588 N.W.2d 688, 697 (Iowa 1999) (holding evidence of substantially similar incidents is usually admissible to prove causation). However, this rule of admissibility is insufficient to overcome the absence of an expert opinion on causation that would allow for the additional determination of applicable instructions and warnings.

Had the decal warned Smith that there might be fatal consequences if he failed to follow the directions in the user instruction manual, as opposed to those on the tow dolly itself, he may have decided to read the manual. However, the record does not reveal how any information in the user manual would have altered Smith's behavior. There was a diagram in the user manual that showed how to attach the security chains, but this information was provided in written form on the decal, which Smith stated he read and understood. There was also a decal on the tow dolly containing a diagram showing how to install the chains.[4]

■ Rock's failure to warn claim suffers from the same flaw as his failure to instruct claim: a lack of causation established by expert testimony. Without establishing what caused the vehicle to disengage, it was impossible for Monick to state that any additional warning would have altered Smith's behavior in any way that would have prevented the Jeep from disengaging. Based on the lack of expert testimony as to how any additional or different warning or instruction would have prevented the Jeep from detaching, summary judgment on the product defect based on a failure to instruct or warn claim is appropriate.[5]

### 3. Rock's Defective Design Claim

■ A defective design claim is governed by § 2(b) of the Restatement, which states that a product "is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe." *Wright,* 652 N.W.2d at 168 (quoting Restatement § 2(b)) (internal quotation marks omitted). "To succeed under section 2(b), a plaintiff must ordinarily show the existence of a reasonable alternative design, and that this design would, at a reasonable cost, have reduced the foreseeability of harm posed by the product." *Parish,* 719 N.W.2d at 543 (internal citation omitted). "The question of whether a reasonable alternative design existed is material because it affects the outcome of the lawsuit under governing law." *Junk,* 2008 WL 5191865, at *4 (citing *Saffels v. Rice,* 40 F.3d 1546, 1550 (8th Cir.1994)). Causation is also a required element of a defective design claim. *Benedict,* 405 F.Supp.2d at 1034. Rock does not dispute that expert testimony is required to survive summary judgment on the defective design claim. As noted above, Rock is not entitled to an adverse inference instruction that the tow dolly was defective.

U–Haul argues Rock has not produced expert testimony about a reasonable alterative design or how such a design would have decreased the risk of harm or prevented the accident. Rock counters by pointing to expert testimony from Monick that reports of 59 incidents that were substantially similar to the subject disengage-

---

4. The user instructions warned against loading personal items into the towed vehicle, which Smith said he did; but Rock has not offered any evidence that loading personal items in the Jeep caused the Jeep to separate from the tow dolly.

5. Rock claims that because Smith heeded the instructions he was given, "the rebuttable presumption of causation arises." Pl.'s Br.

18, ECF No. 104. However, Rock does not support this assertion with any legal authority. The citations Rock does provide stand for the very different proposition that a presumption exists that adequate warnings would have been heeded by the user of a product if they had been provided and that if the user of a product were adequately warned of the danger, he would act to minimize risk.

ment, showing that the tow dolly system loosens, requiring users to constantly tighten the equipment. Monick testified that he could think of "some ways to improve" the tow dolly's ratchet system. Monick Dep. 57–58; Pl.'s App. 55–56, ECF No. 102–2. Monick observed the instructions only tell a user to tighten the straps around the wheels of the towed vehicle; the term "tight" is subjective. Instead of the ratchet U–Haul currently uses, Monick suggested "a torque wrench that's with the vehicle or even built in where you pull it and when it clicks, you're tight." Monick Dep. 39–41; Pl.'s App. 44–46, ECF No. 102–2. He also suggested "an air-release tension that allows a giant spring to apply the straps" to the towed vehicle's wheels or a three-prong device similar to those used to "tighten a timing belt on a car." *Id.* Monick also testified that "longer levers on the ratchet for tightening might get you a more consistent result" because tightening the ratchet would then rely less on the individual's strength. Monick Dep. 57–58; Pl.'s App. 55–56, ECF No. 102–2. Monick testified that the technology needed to implement these changes has existed for several years and is readily available to the general public.

U–Haul counters that Monick did not offer a specific design change and did not opine that adding such a mechanism, or any other change, would have prevented this accident. In addition, U–Haul points out that Rock's expert was unable to conclude that the level of tightness of the straps caused or contributed to the subject accident, and that he does not know if customers are unable to sufficiently tighten the straps with the available equipment. Monick did not offer an opinion as to why the Jeep disengaged from the tow dolly. Thus, U–Haul argues that Rock cannot posit that an alternative design is needed or would be effective.

At this stage of the litigation Rock has produced sufficient evidence of a "reasonable alternative design." *Parish,* 719 N.W.2d at 543. Monick's examples of different tightening mechanisms are similar but in his opinion better ways to ensure more consistent initial tightening of the straps around the wheels of the towed vehicles that would remove some of the inconsistency he worried about between users of various strengths and with varying definitions of "tight." Monick's testimony is also evidence that the alternate design would still be at reasonable cost. However, Rock has not produced evidence that Monick's alternate designs "would, at a reasonable cost, have reduced the foreseeability of harm posed by the product." *Id.*

Monick's alternative designs would help ensure the straps were consistently tightened at the start of each journey, regardless of the user's strength or definition of tight. However, he testified that he believed that the straps seemed to "loosen up" during a journey, a problem his alternative design would not solve. Monick Dep. 12; Def.'s App. 186, ECF No. 93–4. More importantly, Monick testified that he did not know if the straps on the straps on the tow dolly were in fact too loose or if that was the cause of the accident. Instead, he repeatedly stated that he was unable to opine as to the cause of the accident.

█ Rock has not produced evidence that an alternative design would have reduced the likelihood of Smith's Jeep separating from the tow dolly. This inescapably arises from the fact that Monick has offered no opinion as to whether the straps were tight enough at the time Smith's vehicle separated from the tow dolly. Accordingly, because Rock has not presented evidence of what caused the accident as a necessary point of departure, he has neces-

sarily failed to generate a factual dispute over whether Monick's design alternatives would have reduced the foreseeability of the harm posed by the product and his design defect claim must fail. *See Parish,* 719 N.W.2d at 543.

## D. Rock's Negligence Claim

U–Haul claims it is entitled to summary judgment on Rock's negligence claim because Rock cannot establish that U–Haul breached a duty of care or that U–Haul was the proximate cause of the accident. Rock claims that U–Haul was negligent by not providing Smith a user's manual or other instruction beyond those found on the tow dolly and that Monick testified there are numerous ways in which U–Haul has breached the standard of care. However, Rock has not cited any specific example of such a breach, nor evidence that connected a breach to the cause of the accident. Rock also discusses *Thompson v. Kaczinski,* 774 N.W.2d 829 (Iowa 2009), which adopted the concept of duty found in the Restatement (Third) of Torts § 29 and points to evidence showing that U–Haul knew tow dollies had disconnected from vehicles in the past.

A successful negligence claim "requires the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages." *Pitts v. Farm Bureau Life Ins. Co.,* 818 N.W.2d 91, 98 (Iowa 2012) (quoting *Thompson,* 774 N.W.2d at 834). In order for his negligence claim to survive summary judgment, Rock is required to produce evidence supporting each of these elements. *See Vaughn,* 164 F.3d at 1089. U–Haul correctly asserts that Rock has not identified U–Haul negligence related to inspecting, maintaining, or renting the tow dolly. Assuming U–Haul breached a duty owed to Rock by negligently instructing Smith on how to use the tow dolly—a fact that U–

Haul does not concede—Rock has not produced evidence that U–Haul's breach caused the accident. Rock's own expert testified that he did not know whether the accident was caused by the tow dolly's straps not being tight enough; nor would Monick opine as to any specific cause. Without evidence of what caused the Jeep to come off the tow dolly, Rock cannot sustain a negligence claim. *See Housley v. Orteck Intern., Inc.,* 488 F.Supp.2d 819, 830 (S.D.Iowa 2007) ("A necessary element of a negligence cause of action is causation."). The evidence Rock has produced regarding U–Haul's failure to properly instruct Smith when renting the U–Haul or a U–Haul employee's failure to provide Smith with a user manual or instruction is insufficient, by itself, to sustain a negligence claim.

## E. Res Ipsa Loquitur

Rock's First Amended Complaint includes a "Res Ipsa Loquitur" claim against Smith and U–Haul alleging that the "[d]etachment of a sports utility vehicle from a U–Haul dolly ... is an event that does not occur in the absence of negligence on the part of Defendants." Am. Compl. ¶¶ 21–25, ECF No. 74. "Res ipsa loquitur is Latin for 'the thing speaks for itself.' It is a type of circumstantial evidence which allows the jury to 'infer the cause of the injury "from the naked fact of injury, and then to superadd the further inference that this inferred cause proceeded from negligence." ' " *Banks v. Beckwith,* 762 N.W.2d 149, 151–52 (Iowa 2009) (citations omitted). "Res ipsa loquitur applies when ' "(1) the injury is caused by an instrumentality under the exclusive control of the defendant, and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used." ' " *Weyerhaeuser Co. v. Thermogas Co.,* 620 N.W.2d 819, 831 (Iowa 2000) (citations omitted); *see also Housley,*

488 F.Supp.2d at 833. Both elements must be supported by substantial evidence. *Banks,* 762 N.W.2d at 152. Regarding the "exclusive control" requirement, "a plaintiff relying on res ipsa loquitur need not prove that the defendant had control of the instrumentality when the injury occurred." *Weyerhaeuser,* 620 N.W.2d at 832. Rather, "[t]he plaintiff need only show that the defendant controlled the instrumentality at the *time of the alleged negligent act.*" *Id.* A res ipsa loquitur claims is submitted as an alternative to a negligence claim. *Id.* at 831.

U–Haul claims that Smith had exclusive control over the tow dolly prior to the accident, and therefore Rock's res ipsa loquitur claim must fail as to U–Haul. Rock claims that U–Haul committed negligent acts—failing to warn, design defects, inspection—while the tow dolly was under U–Haul's exclusive control. Rock also claims there is no evidence of any change in condition from the time the tow dolly left U–Haul's control and that any negligence on Smith's part was a foreseeable intervening act, which is irrelevant for purpose of applying res ipsa loquitur.

Rock cites *Housley* in support of the proposition that the "exclusive control" portion of the res ipsa loquitur test can be satisfied "by showing that the plaintiff has done 'nothing abnormal with the instrumentality causing the injury and has used it in the manner and for the purpose for which it was intended.'" *Housley,* 488 F.Supp.2d at 833. In *Housley,* the plaintiff was attempting to install a tire when it exploded and injured him. *Housley,* 488 F.Supp.2d at 823. In the instant case, Rock was not the user of the tow dolly; Smith was. Therefore, while Rock can easily show that he has done nothing abnormal with the tow dolly, that fact is irrelevant. The ultimate inquiry remains whether the tow dolly was under U–Haul's exclusive control at the time of the negligent act.

This case is similar to *Weyerhaeuser,* where the plaintiff sued the supplier of a propane tank that was defective and as a result exploded prematurely when exposed to fire causing extensive damage to the plaintiff's property. *Weyerhaeuser,* 620 N.W.2d at 822–23, 830. In *Weyerhaeuser,* the defendant supplied Weyerhaeuser, the plaintiff, with liquid propane tanks for use in forklifts. *Id.* at 822. The plaintiff's employee replaced an empty tank with a full one that had been delivered by the defendant up to a day before. *Id.* at 822, 833. Shortly after replacing the tank, which did not appear damaged, and testing the tank for leaks, the forklift caught fire, and the tank exploded. *Id.* The fire destroyed half of Weyerhaeuser's plant and caused $5.8 million in damage. *Id.* at 823. The Iowa Supreme Court found there was no change in the tank and, accordingly, there was sufficient evidence "to generate a jury question on the control element of res ipsa loquitur." *Id.* at 833.

In *Weyerhaeuser,* the plaintiff's employee inspected the tank prior to using it and did not notice any irregularities. *Id.* at 833. Similarly, Smith inspected the tow dolly at each stop and did not notice any irregularities. The *Weyerhaeuser* plaintiff could not account for every moment of the propane tank's existence from the time it left the defendant's control; this was not fatal to the application of res ipsa loquitur, as the Iowa Supreme Court found the plaintiff only needed to show there was no change in the equipment from the time it left the defendant's control. *Id.* at 832–33. It was "enough if the plaintiff produces sufficient evidence of careful handling in general, and of the absence of unusual incidents, to permit reasonable persons to conclude that, more likely than not, the event was due to the defendant's negli-

gence." *Id.* at 833 (quoting W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* § 39, at 249 (5th ed.1984)). In this case, neither party has produced any evidence that the tow dolly was damaged or that it was altered in any way from the time it left U–Haul's control, and there is no evidence of unusual incidents prior to the Jeep disengaging from the tow dolly.

■ In *Weyerhaeuser*, one of the plaintiff's employees testified that he installed the propane tank and did not notice any problems, such as leaks or bent equipment. *Id.* at 832–33. In this case, Smith loaded the Jeep onto the tow dolly and claims that he attached the safety chains per the instructions provided by U–Haul. There is no evidence that he noticed any problems or that the straps, ratchets, or safety chains on the tow dolly broke or malfunctioned in any way.[6] Thus *Weyerhaeuser* and the case at bar both involve a defendant providing a product (the propane tank and the tow dolly) that a third person claimed to have used properly (the Weyerhaeuser employee who installed the tank and Smith attaching the Jeep to the tow dolly) that nevertheless caused injury to a third party (the owner of the warehouse and Rock). The only distinction between *Weyerhaeuser* and the case at bar is that in *Weyerhaeuser*, the third person using the product was an employee of the plaintiff, whereas in this case it was an independent third-party (Smith) who is now a defendant in this case. However, the principle remains the same: Absent negligence on U–Haul's part, Smith's Jeep would not have disengaged if Smith followed all the instructions he was given by U–Haul, just as the propane tank in *Weyerhaeuser*

would not have exploded absent some negligence on the manufacturer's part. Under *Weyerhaeuser*, the exclusive control element of res ipsa loquitur appears to be satisfied, provided Smith followed U–Haul's instructions.[7] Whether Smith did follow the instructions remains a question for the jury. Accordingly, summary judgment on the negligence claim based on the res ipsa loquitur doctrine must fail.

## III. CONCLUSION

Rock's inability to produce expert evidence as to causation means that U–Haul is entitled to summary judgment on Rock's product liability claims arising out of either a failure to warn or instruct, or defective design. Rock's inability to demonstrate causation also mandates summary judgment be entered in U–Haul's favor on the negligence claim as well. However, Rock's claim that the Jeep would not have disengaged from the tow dolly absent negligence cannot be disposed of at this time. If Smith did in fact follow U–Haul's instructions and apply the security chains, then, absent some negligence on U–Haul's part, the Jeep should not have disengaged. Accordingly, there is a disputed factual issue in this case, namely whether Smith followed U–Haul's instructions and engaged the safety chains on the tow dolly. As set forth above, U–Haul's motion (ECF No. 93) is therefore **granted in part** and **denied in part.**

**IT IS SO ORDERED.**

---

6. U–Haul claims it is likely Smith did not attach the security chains to the Jeep and that failure caused or contributed to the accident. While the record reflects some evidence Smith failed to attach the chains, he testified that he did. If Smith's testimony is believed, as a fact-finder may, then he followed all of

the directions he was provided, and the Jeep nevertheless disengaged.

7. The second element, that the event would not have happened had reasonable care been used, is not contested by the parties.