Timothy L. FISCHER, Appellant,

v.

UNIPAC SERVICE CORPORATION and Student Loan Marketing Association (Plus), Appellees.

No. 93–390.

Supreme Court of Iowa.

July 27, 1994.

Donald L. Carr, II, of Smith, Schneider, Stiles, Wimer, Hudson, Serangeli, Robinson, Mallaney, Shindler & Scalise, P.C., Des Moines, for appellant.

Roger T. Stetson and Margaret C. Callahan of Belin Harris Lamson McCormick, P.C., Des Moines, for appellees.

Considered by HARRIS, P.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

The question presented here is whether, under the federal guaranteed student loan program, defendants wrongfully denied plaintiff a second year of deferment on two student loans. Plaintiff brought this action for damages allegedly caused by a declaration of default on the loans. The district court granted defendants' motion for summary judgment on all claims. Because we

find the court correctly applied the law, we affirm.

## I. *Background.*

In 1984, Timothy L. Fischer took out two guaranteed student loans for $3000 each from Norwest Bank, Des Moines, N.A. to assist in financing his medical education at the Iowa College of Osteopathic Medicine in Des Moines. In 1985, Norwest Bank sold the loans to the Student Loan Marketing Association (a/k/a "Sallie Mae"). UNIPAC Service Corporation (UNIPAC) serviced the loans for Sallie Mae.

Fischer graduated from medical school in 1987. By graduation he had incurred student loans in excess of $150,000 to finance his education. After graduation Fischer entered a two-year combined internship and residency program in family practice at Des Moines General Hospital. Because payments on Fischer's student loans were to begin June 15, 1987, he sought a one-year deferment of his repayment obligations. *See generally* 20 U.S.C. § 1077(a)(2)(C) (1988 & Supp.1994) (loan deferment options). To support his deferral request Fischer submitted a letter from the Iowa State Board of Medical Examiners (Board) certifying that one year of postgraduate medical training is required to receive a medical license in Iowa. *Id.* § 1077(a)(2)(C)(vii) (internship deferment permitted to complete professional recognition requirements). Each of the financial institutions servicing Fischer's loans, including UNIPAC, approved his request for deferral of installment payments from July 1, 1987 to June 30, 1988.

In order to complete the family practice program at Des Moines General, Fischer sought a second year of deferral in July 1988. On July 7 Fischer sent a deferment form to UNIPAC by certified mail indicating that he was serving in an internship or residency program from July 1, 1988 to June 30, 1989. Fischer admits that at the time he requested the extended deferment he did not qualify under the statute. However, Congress amended the internship deferment provision on July 18 to permit deferment for up to two years, regardless of the loan enrollment date, for qualified borrowers "serving in an intern-

ship or residency program leading to a degree or certificate awarded by ... a hospital ... that offers postgraduate training." *See* Pub.L. No. 100–369, § 11(b), 102 Stat. 835, 838 (1988) (codified as amended at 20 U.S.C. § 1077(a)(2)(C)(vii)). UNIPAC denied Fischer's request for deferment on the basis that federal law limited internship or residency deferment to the minimum period required to obtain a professional license. According to Fischer, UNIPAC was the only lending institution which denied the additional year of deferral.

Believing he was entitled to the second year deferment on these two loans, Fischer retained the services of attorney Donald L. Carr II to resolve the matter with UNIPAC. In September Carr informed UNIPAC that all communications concerning Fischer's loans should be sent directly to him. Between July 1988 and May 1989, however, UNIPAC contacted Fischer on numerous occasions by telephone and by letter regarding repayment of the loans. During this same period Carr wrote a number of letters to UNIPAC asserting that Fischer was entitled to an extension on his deferment period and urging that his request form be processed accordingly. In response UNIPAC continued to deny the deferment request on the same grounds.

UNIPAC sent Fischer a final demand letter on January 4, 1989. When he failed to begin repayment on the loans UNIPAC declared Fischer's loans in "default." On February 16 UNIPAC made a claim on behalf of Sallie Mae against the loan guarantor, the Iowa College Aid Commission (Commission). The Commission paid the claim in April, thereby becoming the owner of the loans and underlying promissory notes. Between February and May, Carr continued to protest UNIPAC's denial of deferment and to demand that the default status on the loans be removed. In May UNIPAC made a default report on Fischer's loans to a credit reporting agency.

In 1990 UNIPAC contacted Carr twice regarding a proposed settlement and repurchase agreement. Fischer took no steps to follow through with the proposal. To date Fischer has made no payments on the two

loans and defendants claim he now owes in excess of $12,000.

On January 30, 1991, Fischer filed a six-count petition against UNIPAC and Sallie Mae seeking damages caused by the alleged wrongful declaration of default and the subsequent report of default to a credit bureau. Fischer claimed that (1) denial of the internship deferment violated the Higher Education Act of 1965; (2) UNIPAC's debt collection practices violated the Iowa Consumer Credit Code and the federal Fair Debt Collection Practices Act; (3) Sallie Mae breached the loan agreements; (4) the defendants intentionally interfered with his prospective contractual and business relationships; and (5) the false credit report constituted defamation with malice.

Defendants subsequently filed a motion for summary judgment. Following a hearing the district court granted defendants' motion on all counts. The court concluded as a matter of law that (1) Fischer did not qualify for a second year of internship deferment at the time he made his request; (2) federal regulations pre-empted state law as to permissible debt collection practices on federally insured student loans; (3) federal restrictions on debt collection efforts did not apply to UNIPAC and in any event his claim was time barred; (4) Fischer failed to identify conduct constituting a breach of contract; (5) Fischer presented no evidence of an improper purpose behind defendants' actions; and (6) the credit report did not constitute defamation. Fischer appeals from the district court's ruling and judgment.

On appeal Fischer claims the deferment controversy was not properly resolved by summary judgment because fact questions remain as to his entitlement to the deferment under federal law, the propriety of defendants' debt collection practices, and the defendants' knowledge and motives. Additional facts relevant to the claims will be discussed in our consideration of the legal issues presented.

## II. *Scope of Review.*

Our review of the court's summary judgment ruling is for correction of errors at law. Iowa R.App.P. 4. Summary judgment is appropriate only when the entire record before the court shows there are no genuine issues of material fact in dispute and that the court correctly applied the law. Iowa R.Civ.P. 237(c); *see Hoefer v. Wisconsin Educ. Ass'n Ins. Trust,* 470 N.W.2d 336, 338 (Iowa 1991); *Behr v. Meredith Corp.,* 414 N.W.2d 339, 341 (Iowa 1987).

"The defendants, as the moving parties, carry the burden of showing that no issue of material fact exists." *Hoefer,* 470 N.W.2d at 338. "An issue of fact is 'material' only when the dispute is over facts that might affect the outcome of the suit, given the applicable governing law." *Fees v. Mutual Fire & Auto. Ins. Co.,* 490 N.W.2d 55, 57 (Iowa 1992). Although we view the evidence in the light most favorable to the resisting party, that party "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Iowa R.Civ.P. 237(e).

The summary judgment record here includes the pleadings, depositions, affidavits, and exhibits.

## III. *Higher Education Act.*

■ The fighting issue on appeal is whether UNIPAC's denial of Fischer's request for a second year of internship deferment on two student loans violated federal law governing educational opportunity grants at postsecondary institutions. *See* 20 U.S.C. § 1077(a)(2)(C)(vii); 34 C.F.R. § 682.-210(a)(7) (1993). Fischer claims the record clearly establishes that defendants knew or should have known he was eligible for the extended deferment. The district court concluded Fischer was not entitled to the second year deferment because the relevant statutory amendment became effective eleven days after he requested the deferment.

The Higher Education Act of 1965 (HEA) sets forth terms and conditions for student borrowers of federally insured educational loans. *See generally* 20 U.S.C. §§ 1070–1099. Section 1077(a)(2)(C) of the HEA provides for deferral of repayment obligations on such loans under certain circumstances. Fischer relies on the internship or residency

provision which provides for a deferral period

> not in excess of 2 years during which the borrower is serving an internship, the successful completion of which is required in order to receive professional recognition required to begin professional practice or service ..., *or serving in an internship or residency program leading to a degree or certificate awarded by an institution of higher education, a hospital, or a health care facility that offers postgraduate training.*

*Id.* § 1077(a)(2)(C)(vii) (emphasis added).

While Fischer concedes that on July 7 the degree or certificate provision did not apply to loans taken out before July 1, 1987, he argues that his attorney made additional requests for deferment after the July 18 amendment. *See* Higher Education Technical Amendments Act of 1987, Pub.L. No. 100–50, § 27, 101 Stat. 335, 363 (1987). Further, he points out that under applicable federal regulations "[a] lender may not deny a borrower a deferment to which the borrower is entitled, even though the borrower may be delinquent, but not in default, in making the required installment payments." 34 C.F.R. § 682.210(a)(7). In response, UNIPAC contends Fischer failed to properly document his entitlement to an additional deferral.

On the deferment form Fischer checked the only internship box provided, certifying that he was "serving in an internship/residency, the completion of which is required to receive professional recognition." A hospital official also signed the form and added the dates of Fischer's internal medicine residency along with the name and address of the hospital. At no time after July 7 did Fischer ever request a new deferment form; nor did UNIPAC ever provide an updated form.

Attorney Carr first contacted UNIPAC on Fischer's behalf on September 19. In his letter Carr told UNIPAC that "your records fail to take into account the request for deferment and he continues to receive notices from your office concerning an alleged delinquency." Carr requested that the loans be deferred until Fischer completed his education in June of 1989.

On October 31 Carr wrote to UNIPAC explaining that Fischer continues to be a student and he had "previously provided the necessary deferment papers to your office by certified mail." In a letter dated December 12 UNIPAC reiterated that according to the Board, "only one year of Postgraduate Medical Training is required. Therefore, Mr. Fischer's request for an extended deferment was denied." Carr responded to that letter on December 23:

> The period of time with respect to internship deferments has been extended by federal law and regulation to be two years. Any financial institution or credit organization knows of, or should know of this change of law. I suggest that you check with your legal counsel as to the accuracy of this change of regulation.

He again urged UNIPAC to process Fischer's deferment request.

On February 7, 1989, after the final demand notice and declaration of default, Carr wrote another letter to UNIPAC. He stated:

> Dr. Fischer has previously submitted the deferment forms, forms which are allowed under Federal regulation with respect to two years of deferment for interns. All banks and the Iowa College Aid Commission are aware of this regulation. If you are to be in the collection business with respect to this type of collection, I trust you do know or should learn the Federal regulations.

Again, in a May 12 letter Carr insisted "Dr. Fischer has been and continues to be under the second year of a residency program in Des Moines, Iowa, and that therefore, repayment of his Iowa Guaranteed Student Loan ... should have been deferred." Finally, a year later Carr again demanded that UNIPAC correct the default status because Fischer "clearly qualifies for deferment under current law and regulations."

We turn now to the regulations governing deferment of repayment obligations on federally insured student loans.

The Code of Federal Regulations provides that "[a]s a condition for receiving a defer-

ment, the borrower shall request the deferment, and provide the lender with all information and documents required to establish eligibility for a specific type of deferment." 34 C.F.R. § 682.210(a)(4). Subsection 682.-210(n)(1) sets forth the documentation necessary to establish entitlement to deferral under the degree or certificate provision:

> To qualify for an internship or residency deferment . . ., the borrower shall provide the lender with a statement from an authorized official of the organization with which the borrower is undertaking the internship or residency program certifying—
>
> (i) That the internship or residency program is a supervised training program that requires the borrower to hold at least a baccalaureate degree prior to acceptance into the program;
>
> (ii) That . . . the internship or residency program leads to a degree or certificate awarded by an institution of higher education, a hospital, or a health care facility that offers postgraduate training;
>
> (iii) That the borrower has been accepted into the internship or residency program; and
>
> (iv) The anticipated dates on which the borrower will begin and complete the internship or residency program. . . .

*Id.* § 682.210(n)(1).

This case presents a classic example of miscommunication. Although we find it regrettable the parties could not uncross their wires during ten months of written and oral communications, we conclude Fischer simply failed to establish that he was entitled to the additional year of deferment. During his deposition Fischer testified that he understood UNIPAC's position with respect to the denial of his request. When asked what evidence he submitted to support his eligibility under the degree or certificate provision, Fischer mentioned the July 7 deferment form and also stated he "had Don Carr correspond with them and tell them." Fischer added that the December, February, and May letters to UNIPAC clearly referenced the two-year internship provision and even pointed out that federal regulations had changed.

Even assuming the correspondence on Fischer's behalf adequately identified the specific type of deferment Fischer sought, we find no evidence that Fischer provided UNIPAC with the requisite statement from an authorized hospital official certifying that he was serving in a qualifying program leading to a degree or certificate in family practice. *See* 34 C.F.R. § 682.210(n)(1). The only documents UNIPAC possessed to support Fischer's claim related to the provision which was the basis for his first-year deferral. Further, the correspondence merely contained general assertions that Fischer was entitled to a second year of deferment because he remained in an internship program.

■ We find it clear under the regulations that the borrower bears the burden of establishing "eligibility for a specific type of deferment." *Id.* § 682.210(a)(4). It was Fischer's responsibility to provide UNIPAC with the proper documents to establish his eligibility for deferment.

Consequently, UNIPAC's denial of an extended deferment on Fischer's loans did not violate the HEA. We conclude the court properly entered summary judgment for defendants on this count.

IV. *Iowa Consumer Credit Code.*

■ Fischer asserts defendants violated the Iowa Consumer Credit Code when they continued to contact him about his loan delinquency by telephone and by mail notwithstanding repeated written requests to communicate through his attorney. The court ruled that federal regulations governing debt collection efforts on federally insured loans pre-empted conflicting state law. We agree.

Article 7 of the Iowa Consumer Credit Code places certain restrictions on debt collection practices. *See generally* Iowa Code §§ 537.7101–.7103 (1991). Fischer argues that UNIPAC's direct contacts violated several prohibited practices. *See, e.g.,* Iowa Code § 537.7103(5)(e) (communication with debtor represented by attorney).

By contrast, federal regulations require lenders in the collection of delinquent guarantee agency loans to exercise "due diligence." *See* 51 Fed.Reg. 40,886 (1986) (codi-

fied at 34 C.F.R. § 682.411). To meet the standard of due diligence lenders are required, among other things, to complete a particular sequence of written and oral contacts with the borrower demanding repayment of delinquent or defaulted loan obligations. 34 C.F.R. § 682.411.

■ Because the federal regulations in this area clearly conflict with restrictions on debt collection efforts under Iowa law, we believe state law is pre-empted to the extent it is inconsistent. "Pre-emption [of state law] may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *FMC Corp. v. Holliday*, 498 U.S. 52, 57, 111 S.Ct. 403, 407, 112 L.Ed.2d 356, 363 (1990) (citation omitted). Moreover, we find support for our conclusion in an interpretive statement issued by the Secretary of Education (Secretary) on October 1, 1990. *See* 55 Fed.Reg. 40,120 (1990). The Secretary explained that at the time the regulations were promulgated in 1986 "the Secretary did not believe there was any need to articulate his intention to pre-empt inconsistent state laws...." *Id.* at 40,120. However, a number of borrowers later "invoked State law to attempt to prevent the holder of the loan from commencing or completing the sequence of collection actions prescribed in these regulations...." *Id.* It therefore became necessary "to immediately clarify the Secretary's intention to pre-empt inconsistent state law" to the extent necessary to permit compliance with the federal regulations. *Id.* at 40,121; *see also* 34 C.F.R. § 682.411(n) (1993). The Secretary concluded that the public interest outweighed any competing state interests. 55 Fed.Reg. at 40,121.

In any event, Fischer claims the due diligence requirements do not apply to his loans because they were promulgated two years after he signed the loan agreements. This argument is without merit. Section 682.411 of the Code of Federal Regulations became "effective for loans on which the first day of delinquency occurs on or after March 10, 1987." 51 Fed.Reg. 40,886 (1986). Fischer's loans became delinquent in 1988.

Because Fischer makes no claim that defendants violated other debt collection practices not prescribed by federal law we hold that the court did not err in ruling for defendants on this count.

## V. *Fair Debt Collection Practices Act.*

■ Similarly, Fischer contends UNI-PAC's debt collection practices violated the federal Fair Debt Collection Practices Act (FDCPA). *See* 15 U.S.C. §§ 1692–1692o (1988 & Supp.1994). The court ruled the FDCPA did not apply here because UNI-PAC was not a "debt collector" within the meaning of the statute.

As a loan servicing company UNIPAC monitors student enrollment status, corresponds with the student, school, and guarantee agency, calculates interest, determines eligibility for deferrals, and engages in debt collection efforts when a borrower becomes delinquent or in default on repayment obligations. Beginning in April 1985 UNIPAC assumed all recordkeeping and servicing functions for Fischer's loans on behalf of Sallie Mae. UNIPAC declared Fischer in default in January 1989.

Under the FDCPA it is unlawful for debt collectors to use abusive, deceptive, and unfair tactics while collecting debts for others. 15 U.S.C. § 1692.

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

*Id.* § 1692a(6). Yet a debt collector does not include

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns *a debt which was not in default at the time it was obtained by such person.*

*Id.* § 1692a(6)(F)(iii) (emphasis added). By its plain terms the FDCPA does not apply here because Fischer was not in default at the time UNIPAC began servicing his loans.

■ Further, we believe that collection efforts by holders of federally insured student loans or their servicing companies are simply not the kind of activity Congress intended to regulate. *See Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir.1985), *modified on other grounds,* 761 F.2d 237 (mortgage servicing company is not a debt collector under the FDCPA). The legislative history of section 1692a(6) provides: "The committee intends the term 'debt collector' . . . to cover all third persons who regularly collect debts for others. The primary persons intended to be covered are independent debt collectors." S.Rep. No. 95–382, 95th Cong., 1st Sess. (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1697–98; *see also Perry,* 756 F.2d at 1208; *Games v. Cavazos,* 737 F.Supp. 1368, 1389 (D.Del.1990); *Kimber v. Federal Fin. Corp.,* 668 F.Supp. 1480, 1485–86 (M.D.Ala.1987).

We conclude UNIPAC is not an independent debt collector subject to the provisions of the FDCPA. Accordingly, summary judgment on this claim was appropriate.

## VI. *Intentional Torts.*

Fischer also argues defendants intentionally interfered with his prospective contractual and business relationships and defamed him when they wrongfully declared his loans in default and reported the default status to a credit reporting agency. He urges that because defendants knew or should have known that he was not in default and that the credit report would result in damages, they acted intentionally and with improper motives. The court found that Fischer failed to set forth specific facts to support his claim that defendants acted in bad faith and with malice. We agree.

■ An essential element of a claim of interference with prospective relationships is "improper" interference. *Nesler v. Fisher & Co., Inc.,* 452 N.W.2d 191, 199 (Iowa 1990). The plaintiff must show a "purpose on the defendant's part to financially injure or destroy the plaintiff. . . ." *Id.* at 199 (citation omitted). When asked why Fischer believed defendants acted with an improper purpose, he replied: "They had to know what they were threatening me with was going to interfere with other business relationships, and

they should have known that what they were doing was illegal." We conclude the record fails to support a prima facie claim of tortious interference. *See Hoefer,* 470 N.W.2d at 341 (defendants must act with a predominately improper purpose).

■ Additionally, we may not find improper interference where the defendant has a right or duty to act. *Jackson v. State Bank of Wapello,* 488 N.W.2d 151, 157 (Iowa 1992); *Preferred Mktg. v. Hawkeye Nat'l Life Ins. Co.,* 452 N.W.2d 389, 396 (Iowa 1990); *Iowa Supply Co. v. Grooms & Co. Constr., Inc.,* 428 N.W.2d 662, 666–67 (Iowa 1988). The reporting of a bad debt to a credit reporting agency is permissible under both federal and state law. *See* 15 U.S.C. § 1692c(b); Iowa Code § 537.7103(3)(a)(2). In fact, holders of federally insured loans are required to make reports on unpaid loans to credit bureaus. 20 U.S.C. § 1080a.

■ Likewise, Fischer's claim of defamation must fail. A qualified privilege protects one who makes a statement "in good faith on any subject . . . to which that person has a right or duty . . . under circumstances fairly warranted by the occasion." *Lara v. Thomas,* 512 N.W.2d 777, 785 (Iowa 1994) (citation omitted). The record fails to show there is a genuine issue upon the allegation of bad faith in the reporting of Fischer's default.

We therefore conclude Fischer's tort claims were correctly resolved by summary judgment.

## VII. *Conclusion.*

We have considered all issues presented and affirm the district court's grant of summary judgment for defendants on all claims raised in Fischer's petition.

**AFFIRMED.**