**IN THE COURT OF APPEALS OF IOWA**

No. 13-1208
Filed July 16, 2014

**GRINNELL STATE BANK,**
        Plaintiff-Appellee,

**vs.**

PARTIES IN POSSESSION,
        Defendants,

and

**SUZANNE K. STEPHENSON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Douglas F. Staskal,

Judge.


        Suzanne Stephenson appeals from summary judgment entered in favor of

mortgagee's successor Grinnell State Bank.  **AFFIRMED.**



        Robert C. Gainer and Amanda R. Rutherford of Cutler Law Firm, P.C.,

West Des Moines, for appellant.

        Michael K. Thibodeau of Simpson, Jensen, Abels, Fischer & Bouslog,

P.C., Des Moines, for appellee.



        Heard by Danilson, C.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, J.**

Suzanne Stephenson appeals from summary judgment entered in favor of mortgagee's successor, Grinnell State Bank. She asserts genuine issues of fact, including the authenticity of the mortgage documents and whether an oral representation by a banker was not honored, preclude summary judgment.

### I. Background Facts and Proceedings.

On June 13, 2012, Grinnell State Bank (Bank) filed a petition for foreclosure against Suzanne Stephenson.[1] Count I dealt with a March 9, 2005 promissory note in the sum of $227,617.56 (Note 1), which was secured by two mortgages dated July 1, 2003 describing two residential properties—two duplexes (Mortgages 1 and 2). Count II dealt with a December 13, 2006 promissory note in the sum of $430,499.61 (Note 2), which was secured by two mortgages dated December 16, 2005, describing agricultural real estate (Mortgages 3 and 4).

The petition alleged, in respect to Count I, Stephenson was "delinquent in payments on Note 1, Mortgage 1 and Mortgage 2," and sought judgment against Stephenson personally and in rem in the sum of $165,264.40 plus interest and costs. Concerning Count II, the petition alleged Stephenson "had failed to cure her default" and "failed to make payment after being sent a fourteen (14) day

---

[1] Grinnell State Bank is the successor in interest to certain assets of Polk County Bank purchased by Grinnell State Bank from the Federal Deposit Insurance Corporation as receiver. The suit also named as defendants "parties in possession" with respect to the residential properties at issue because the duplexes were rented out to others. No appearance or answer was made by any party in possession.

demand for payment." The Bank sought judgment against Stephenson and in rem in the sum of $429,565.07 plus interest and costs.

In her answer, Stephenson admitted she executed Note 1 in the sum of $227,617.56, and admitted the note was secured by Mortgage 1 and Mortgage 2 and the properties described. She admitted she was the owner of the real estate described in Mortgage 1 and Mortgage 2. She further admitted she was delinquent in payments, but denied owing the amount claimed.

As to Count II, Stephenson's answer admitted the following paragraphs:

> 25. On or about December 13, 2006, Defendant Stephenson made, executed and delivered to Polk County Bank a Promissory Note in writing for the sum of $430,499.61 (hereinafter "Note 2"). A copy of said Note 2 is attached hereto as Exhibit "H", and is incorporated herein by this reference.
> 26. On or about January 13, 2008, Defendant made, executed and delivered to Polk County Bank a Change in Terms Agreement extending the maturity date of Note 2 to January 13, 2009 (hereinafter "Change in Terms Agreement 1"). A copy of Change in Terms Agreement 1 is attached hereto as Exhibit "I".
> 27. On or about March 23, 2009, Defendant Stephenson made, executed and delivered to Polk County Bank a Change in Terms Agreement extending the maturity date of Note 2 to April 15, 2009 (hereinafter "Change in of Change in Terms Agreement 2 is attached hereto as Stephenson made, executed Terms Agreement 2"). A copy Exhibit "J".
> 28. On or about May 28, 2009, Defendant Stephenson made, executed and delivered to Polk County Bank a Change in Terms Agreement changing the interest rate, the payment terms and the maturity date (hereinafter "Change in Terms Agreement 3"). A copy of Change in Terms Agreement 3 is attached hereto as Exhibit "K".

Stephenson, however, denied that Note 2 was secured by the real estate described in the petition,[2] though she admitted she was the owner of the real

---

[2] Specifically, Stephenson denied paragraphs 29 and 30, which read:

estate described in Mortgage 3 and Mortgage 4 and that she failed to make payments on the note after being sent a demand for payment.

An amended petition was allowed. It asserted updated calculations of money owed. Stephenson denied the amended paragraphs.

The Bank filed a motion for summary judgment with supporting documentation. In resistance, Stephenson filed a "statement of disputed facts,"

---

29. Said Note 2 is secured by a certain mortgage on the following described real estate:

The South 51.75 Feet of Lot 11 in Reedbury, an Official Plat, Now Included in and Forming a Part of the City of Des Moines, Polk County, IA.

Said mortgage is dated December 16, 2005 and recorded December 20, 2005 in Book 11449 at Page 313, in the records of the Polk County Recorder (hereinafter "Mortgage 3"). A copy of said Mortgage 3 is attached hereto as Exhibit "L" and is incorporated herein by this reference.

30. Said Note 2 is also secured by a certain mortgage on the following described real estate:

Commencing at the Southeast corner of Lot 11 Reedbury, an Official Plat, Now Included in and Forming a Part of the City of Des Moines, Polk County, Iowa; thence South 204.25 Feet, thence West 584.83 Feet to the East Line of 42nd Street, Thence North 204.25 Feet along the East Line of 42nd Street, to a point in line with the South Line of Lot 11, thence East 584.83 Feet to the Place of Beginning, said property being situated in the Northwest Quarter (NW 1/4) of the Northeast Quarter (NE 1/4) of Section 33, Township 79 North, Range 23, West of the 5th P.M., Polk County, Iowa, now included in and forming a part of the City of Des Moines, Polk County, Iowa

AND

The Southwest Quarter (SW 1/4) of the Northeast Quarter (NE 1/4) of Section 33, Township 79 North, Range 23, West of the 5th P.M., in the City of Des Moines, Polk County, Iowa, subject to legally established highways.

Said mortgage is dated December 16, 2005 and recorded December 20, 2005 in Book 11449 at Page 324, in the records of the Polk County Recorder (hereinafter "Mortgage 4"). A copy of said Mortgage 4 is attached hereto as Exhibit "M" and is incorporated herein by this reference.

which included the statement Mortgage 4 had been "changed after execution by removing the actual 'Attachment A' and inserting a holographic 'Page 10,' and is therefore invalid." She further asserted Mortgage 3 "either was not executed by Defendant, or was changed after execution and is therefore invalid."

Stephenson also asserted in her resistance to summary judgment that Tim Rhoades, who had been Stephenson's loan officer at Polk County Bank, had a practice of "releasing the mortgage on a portion of real estate for which a partial repayment was sufficient"; she had relied on that practice; in December 2008, she had "provided Polk County Bank representative Greg Baker a partial repayment offer of $250,000 to release a portion of land"; the partial repayment was "sufficient value to release the portion of the land requested be released"; and Baker had refused partial payment, which "precluded Defendant from continuing to meet any obligations on notes owed." Finally, Stephenson asserted Mortgage 1 and Mortgage 2 "do not accurately reflect the agreement entered into by the parties, either through a non-approved change to the documents or mistake or inadvertence."

Stephenson's supporting documentation included Stephenson's affidavit in which she avowed she had read her statement of disputed facts "and find each and every one of those facts to be true and accurate," and an affidavit of Tim Rhoades. In a supplemental affidavit, Stephenson avowed, "I do not believe the "Addendum to Plaintiff's [Mortgage 4] Exhibit 'M' is the agreed-to real estate to be covered by that mortgage." She further stated,

> (5) As relating to Plaintiff's Exhibits "L" [Mortgage 3] and "M" to the Petition, those documents do not accurately reflect the extent

of any mortgage as I dispute the dollar amount covered by the mortgage, and the legal description supporting Exhibit "M".

(6) As relating to Plaintiffs Exhibits "B" [Mortgage 1] and "C" [Mortgage 2] to the Petition, those documents do not accurately reflect the extent of any mortgage as I dispute the dollar amount covered by the mortgage.

(7) I did not agree to a $2,000,000.00 mortgage to be placed on any land I owned. The total amount I was ever advanced by Plaintiff was less than $1,000,000.00.

The Bank, in response, argued Stephenson's signature on a mediation agreement,[3] submitted as exhibit "P" to the petition, "is an admission that she owes the money and the mortgages are valid."

The district court heard oral arguments. On June 5, 2013, the court issued its written ruling granting summary judgment for the Bank. The court noted a resisting party must come forward with specific facts constituting competent evidence supporting its claim or defense. The court concluded Stephenson's statement—that Mortgages 3 and 4 were "not executed by the Defendant or, [were] changed after execution"—was not an effective denial of her signature and did not raise a genuine fact issue regarding the validity of the

---

[3] The mediation agreement was signed by Stephenson on March 21, 2012, and provides as follows:

Stephenson to retire Note #5546 [Note 1] by May 1, 2012.

In the event Stephenson fails to retire [Note 1] by May 1, 2012, Bank shall file a voluntary nonjudicial foreclosure at any time after midnight May 1, 2012.

Stephenson shall execute nonjudicial voluntary foreclosure documents as soon as Stephenson's counsel receives the documents from Bank's counsel.

In the event any sales proceeds from the properties that secure [Note1] exceed the amount due and owing on [Note 1], the excess shall be applied to Note #6162 [Note 2].

Bank shall refrain from collection actions on [Note 2] until June 1, 2012.

mortgages. As for her second defense concerning her claim that the Bank refused her offer of partial payment, the court wrote:

> The affidavit submitted in support of this contention, from the loan officer, does not establish that fact. Moreover, the defendant has not tendered evidence that she made any large partial repayment. Finally, the notes and mortgages contain integration clauses and cannot be varied or modified based on prior oral representations or agreements.

On July 9, the court entered a foreclosure decree.

Stephenson appeals, contending she adequately raised issues of fact that should have precluded summary judgment.

**II. Scope and Standard of Review.**

"Foreclosure proceedings are typically tried in equity." *Freedom Fin. Bank v. Estate of Boesen*, 805 N.W.2d 802, 806 (Iowa 2011); Iowa Code § 654.1 (2011). This appeal, however, is from an order granting summary judgment and related supplemental orders. Consequently, our review is for correction of errors of law. Iowa R. App. P. 6.907; *Estate of Boesen*, 805 N.W.2d at 806.

Summary judgment is properly granted when the pleadings, depositions, admissions, interrogatory answers, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). We examine the evidence in the light most favorable to the nonmoving party to decide whether the moving party has met its burden. *Pavone v. Kirke*, 807 N.W.2d 828, 832 (Iowa 2011).

**III. Discussion.**

The question presented is whether the Bank has established it is entitled to judgment as a matter of law. We begin with what is not disputed:

**Note 1.** Stephenson admits she executed Note 1 on March 9, 2005, in the sum of $227,617.56, the note was secured by Mortgage 1 and Mortgage 2, she was the owner of the real estate described in Mortgage 1 and Mortgage 2, and that she was delinquent in payments.

**Note 2.** Stephenson admits she executed Note 2 on December 13, 2006, in the sum of $430,499.61. The original Note 2 is not in evidence. Two mortgages securing agricultural property in Des Moines, Polk County, Iowa, are in evidence—each is signed by Stephenson, is notarized, and was recorded on December 20, 2005. Stephenson admits she owns the properties described in Mortgage 3 and Mortgage 4. She also admits she has failed to cure her default on Note 2.

Stephenson executed written changes in the terms of Note 2 on January 13, 2008; January 13, 2009; March 23, 2009; and May 28, 2009. The "description of collateral" in the March 23 and May 28 agreements reads as follows: "42.2 acres of undeveloped property located on the east side of Des Moines, IA secured with 1st lien mortgage agreement dated 12/16/05." The May 28, 2009 change in terms agreement also reads in part:

> DESCRIPTION OF CHANGE IN TERMS. Renewal of Note #40506162 with an interest rate change from 7.25% to 7.00% and changing to a quarterly principal and interest payments for 36 months.
> PROMISE TO PAY. Suzanne K Stephenson ("Borrower") promises to pay to POLK COUNTY BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount

of Four Hundred Thirty Thousand Four Hundred Ninety-nine & 61/100 Dollars ($430,499.61), together with interest on the unpaid principal balance from May 28, 2009, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 7.000% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

PAYMENT. Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in 11 regular payments of $7,664.90 each and one irregular last payment estimated at $436,594.36. Borrower's first payment is due August 15, 2009, and all subsequent payments are due on the same day of each quarter after that. Borrower's final payment will be due on May 15, 2012, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

. . . .

COLLATERAL. Borrower acknowledges this Agreement is secured by Two Real Estate Mortgages dated December 16, 2005 from Suzanne K Stephenson to Polk County Bank on 42.2 acres of undeveloped property located on the east side of Des Moines, IA.

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR NOTE. The Promissory Note #40606162 dated December 13, 2006 from Suzanne K Stephenson to Polk County Bank in the amount of $430,499.61.

The Bank has provided documentation as to its calculations about the amount Stephenson owes, including the affidavit of Jonathan Albert, which provides in part,

> That as Senior Vice President for the Plaintiff, I have in my care, custody and control the books and records that show that Defendant, Suzanne K. Stephenson is indebted to the Plaintiff on Note 1 for the sum of $179,192.40; together with accrued interest through July 5, 2012 of $16,504.56; together with interest accruing at the rate of 7.5% per annum ($36.82 per day) after July 5, 2012; together with late charges of $1,453.50; and together with abstracting costs of $375.00; and on Note 2 the sum of $437,678.07; together with accrued interest through July 5, 2012 of $64,299.71; together with interest accruing at the rate of 18.00% per annum ($218.83 per day) after July 5, 2012; together with late charges of $125.00; and together with abstracting costs of $375.00; plus court costs and reasonable attorney fees after being allowed credits; and that said amount is justly due and owing to the Plaintiff.

Also provided were copies of the four mortgages securing Notes 1 and 2. All four mortgages bear Stephenson's signature, are notarized, contain descriptions of properties Stephenson admits she owns, and are recorded. The Bank has proved it is entitled to judgment as a matter of law unless "by affidavits or as otherwise provided" in rule 1.981, Stephenson has "set forth specific facts showing that there is a genuine issue for trial." Iowa R. Civ. P. 1.981(5).

Our rules of summary judgment do not permit the nonmovant to rest on conclusory allegations in the pleadings in the face of a properly supported motion for summary judgment. Iowa R. Civ. P. 1.981(5) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in the pleadings . . . ."). "A

responsive showing must be made that would allow a reasonable fact finder to conclude in favor of the nonmovant on the claim." *Castro v. State*, 795 N.W.2d 789, 795 (Iowa 2011); *see also Parish v. Jumpking, Inc.*, 719 N.W.2d 540, 545 (Iowa 2006) (stating the requirement for a response to a motion for summary judgment must assert genuine issues of facts, which are sufficient if "a reasonable fact finder could return a verdict or decision for the nonmoving party based upon those facts"). We "inquire whether a reasonable jury faced with the evidence presented could return a verdict for the nonmoving party." *Clinkscales v. Nelson Sec., Inc.*, 697 N.W.2d 836, 841 (Iowa 2005)

A. *Validity of mortgages.* Stephenson's resistance to the Bank's motion for summary judgment is not sufficient to allow a reasonable fact finder to conclude in her favor.[4] Her statement of disputed facts asserts Mortgage 4 had been "changed after execution by removing the actual 'Attachment A' and inserting a holographic 'Page 10,' and is therefore invalid." This statement in no way contests the legal description on page 10 of the signed, notarized, and recorded Mortgage 4. Similarly, Stephenson's statement that Mortgage 3 "either was not executed by Defendant, or was changed after execution and is therefore invalid" provides no specific facts in dispute and is conclusory at best. In a supplemental affidavit, Stephenson avowed, "I do not believe the "Addendum to

---

[4] Stephenson contends her position is supported by our unpublished decision, *Great Western Bank v. Creger*, No. 06-1550, 2007 WL 4191982 (Iowa Ct. App. Nov. 29, 2007). We disagree. In *Creger*, we noted: "[Great Western Bank] GWB alleged that Creger executed the documents and then failed to perform under their terms. Undisputed, these facts were sufficient to warrant a grant of summary judgment in favor of GWB." 2007 WL 4191982, at *3. However, Creger had "presented a sworn affidavit disputing the authenticity of his signature on the documents." *Id.* Stephenson does not dispute the authenticity of her signature on any of the documents and thus *Creger* is inapposite.

Plaintiff's [Mortgage 4] Exhibit 'M' is the agreed-to real estate to be covered by that mortgage." But she owns the property listed in Mortgage 3 and Mortgage 4. She does not contest she signed the notarized mortgages. Those mortgages were recorded December 20, 2005. She signed several amended loan agreements, all of which reference two real estate mortgages dated December 16, 2005, on 42.2 acres of undeveloped property located on the east side of Des Moines, Iowa. The additional statements in Stephenson's supplemental affidavit that dispute the "extent of the mortgage[s]" provide no defense to the amounts she admittedly owes on Notes 1 and 2.[5]

Stephenson argues in her appellate brief that her affidavit is sufficient to establish there is a factual dispute as to whether "Stephenson signed the *actual* mortgage documents Grinnell State Bank seeks to use in this foreclosure action." She argues the Bank must come forward with

> evidence showing that (1) Stephenson signed the mortgage document in its altered state, or (2) that Stephenson did not sign the mortgage document in its altered state, but that the alteration made by Grinnell State Bank or Polk County Bank did not change the agreement in any substantial way or invalidate the agreement.

---

[5] Stephenson's supplemental affidavit includes her assertion that she "did not agree to a $2,000,000.00 mortgage to be placed on any land I owned. The total amount ever advanced by Plaintiff was less than $1,000,000.00." Both Mortgages 3 and 4 contain the following:

> NOTICE: THIS MORTGAGE SECURES CREDIT IN THE AMOUNT OF $2,000,000.00. LOANS AND ADVANCES UP TO THIS AMOUNT, TOGETHER WITH INTEREST, ARE SENIOR TO INDEBTEDNESS TO OTHER CREDITORS UNDER SUBSEQUENTLY RECORDED OR FILED MORTGAGES OR LIENS.

But this is a "maximum obligation limit," not the amount of "secured debt."

Stephenson has the burden of proving the alleged alteration occurred after her signature and was material.[6] *Hartwick v. Hartwick*, 252 N.W. 502, 507 (Iowa 1934) ("Mere proof that an alteration was in fact made is not sufficient to cast upon the party relying on the instrument the burden to show that it was made before delivery. . . . The burden is upon the party alleging the material alteration in such written instrument to show that it was made after delivery of the instrument." (internal quotation marks and citations omitted)).

In any event, the Bank responds that Stephenson's affidavit contains speculation, which is not sufficient to generate a genuine issue of fact. *Hlubek v. Pelecky*, 701 N.W.2d 93, 96 (Iowa 2005) ("Speculation is not sufficient to generate a genuine issue of fact."). We agree. With Note 2 Stephenson admittedly borrowed almost half a million dollars from the bank secured by mortgages describing property she owns. Her bare statement —"I do not believe the 'Addendum to Plaintiff's [Mortgage 4] Exhibit "M"' is the agreed-to real estate to be covered by that mortgage"—provides nothing more than speculation and does not raise a material factual dispute.

*B. Refusal of partial loan repayment.* We turn next to for Stephenson's assertions that Polk County Bank violated an oral agreement of terms other than those found in the written documents. In support, Stephenson submitted a statement of disputed facts, including these:

---

[6] *See also Van Horn v. Bell*, 11 Iowa 465, 467-68 (1861) ("The defendant failed to deny the execution of the mortgage under oath, and until this was done, the burden of proof was upon him to show that the alteration was made without the knowledge or consent of the parties.").

    3. Suzanne Stephenson's loan officer at Polk County Bank was Tim Rhoades, until Mr. Rhoades left the employment of Polk County Bank in 2008.

    4. Mr. Rhoades informed Plaintiff [sic] of his practice of releasing the mortgage on a portion of real estate for which a partial repayment was sufficient. *See* Affidavit of Tim Rhoades.

    5. Mr. Rhoades provided this information to Defendant, who relied on this information in entering into mortgages and notes with Polk County Bank. *See* Affidavit of Suzanne Stephenson.

    6. This ability of Defendant to prepay remained in full force and effect subsequent to any change in term agreements executed by Ms. Stephenson.

    7. On or about December 2008, Defendant provided Polk County Bank representative Greg Baker with a partial repayment offer of $250,000.00 to release a portion of land for which Polk County Bank asserts it held a mortgage.

    8. The partial repayment was of sufficient value to release the portion of the land requested be released. See Affidavit of Suzanne Stephenson.

    9. That in breach of the representations provided in loan no. 40506162 entered into between the parties, Polk County Bank representative Greg Baker refused the partial payment provided by Defendant in December 2008.

    10. Defendant Suzanne Stephenson was precluded from performing under the note (*see* section "PAYMENTS") by Mr. Baker.

    11. The refusal of Polk County Bank to allow for, the prepayment, and partial release of land, precluded Defendant from continuing to meet any obligations on notes owed to Polk County Bank.

Stephenson's supporting affidavit avows she "find[s] each and every one of those facts to be true and accurate."

Even if we were to assume these documents could be sufficient to establish Stephenson in fact offered to pay $250,000, which we doubt, we must point out that Stephenson's paragraph 7 provides no information as to what "portion of land" Stephenson requested to be released. There is nothing from which this court can evaluate whether the asserted proffer was "of sufficient

value to release" the unspecified portion of land. And we are left not knowing to what paragraph 10's parenthetical "see section 'PAYMENTS'" references.

She also submitted the affidavit of Tim Rhoades, in which he avows:

> 1. I have been a loan officer in the Polk County area for approximately 20 years.
> 2. I was a loan officer at Polk County Bank during the time period 1991 through 2008.
> 3. I was a loan officer for Suzanne Stephenson at Polk County Bank until I separated from employment with Polk County Bank.
> 4. When presented with an option for partial repayment by customers on real estate loans, it was my practice to evaluate whether the particular partial repayment encompassed sufficient loan value to release the mortgage on a proportionate amount of real estate.
> 5. It was my practice that if the partial repayment was sufficient, I would release the mortgage on the portion of the real estate for which the repayment was sufficient.
> 6. It is likely I would have conveyed my practice concerning partial repayment and mortgage release to Suzanne while I was her loan officer at Polk County Bank.
> 7. My practice concerning evaluation of partial repayment and mortgage release is consistent with banking industry practice in and around Polk County, Iowa.

As noted by the district court, Rhoades's affidavit did not establish what Stephenson purported, that Stephenson would be able to obtain a release of some of the mortgaged property upon a large prepayment of notes. In fact, the promissory notes clearly and boldly state—and Iowa Code section 535.17 requires[7]—any modification to the agreements must be in writing. We note, too

---

[7] Iowa Code section 535.17 provides, in part:
> 1. A credit agreement is not enforceable in contract law by way of action or defense by any party unless a writing exists which contains all of the material terms of the agreement and is signed by the party against whom enforcement is sought.
> 2. Unless otherwise expressly agreed in writing, a modification of a credit agreement which occurs after the person asserting the modification has been notified in writing that oral or implied modifications

that Note 1 states, "Any partial prepayment will not excuse or reduce any later

scheduled payment until this note is paid in full (unless, when I make the

---

to the credit agreement are unenforceable and should not be relied upon, is not enforceable in contract law by way of action or defense by any party unless a writing exists containing the material terms of the modification and is signed by the party against whom enforcement is sought.  This notification can be included among the terms of a credit agreement, can be included on a separate form or together with other disclosures that are provided when the agreement is made, or can be given wholly apart from the agreement and at any time after the agreement has been made.  To be effective, the notification and its language must be conspicuous.  A person who gives a notification is bound by it to the same extent as the person notified.  A notification with respect to any credit agreement is effective with respect to all other credit agreements then in effect between the parties if the notification conspicuously so provides.  When a modification is required by this section to be in writing and signed, such requirement cannot be modified except by clear and explicit language in a writing signed by the person against whom the modification is to be enforced.

3. A notification referred to in subsection 2 in the following form in boldface, ten point type, complies with the requirements of this section:
IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.
. . . .
6. This section shall be interpreted and applied purposively to ensure that contract actions and defenses on credit agreements are supported by clear and certain written proof of the terms of such agreements to protect against fraud and to enhance the clear and predictable understanding of rights and duties under credit agreements.

7. This section entirely displaces principles of common law and equity that would make or recognize exceptions to or otherwise limit or dilute the force and effect of its provisions concerning the enforcement in contract law of credit agreements or modifications of credit agreements. However, this section does not displace any additional or other requirements of contract law, which shall continue to apply, with respect to the making of enforceable contracts, including the requirement of consideration or other basis of validation.

prepayment, you and I agree in writing to the contrary)." The May 28, 2009 change-in-terms agreement provides,

> PREPAYMENT. Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result In Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender.

Stephenson's resistance and affidavits in support did not rebut the undisputed facts in the motion for summary judgment and did not "set forth specific facts showing that there is a genuine issue for trial." Iowa R. Civ. P. 1.981(5). We therefore affirm the entry of summary judgment in favor of the Bank.

**AFFIRMED.**