**IN THE COURT OF APPEALS OF IOWA**

No. 13-1044
Filed July 30, 2014

DOUGLAS V. STENOIEN, LAVOLA
STENOIEN, SHERYL STENOIEN,
and GWENDOLYN BROWN,
        Plaintiffs-Appellants,

vs.

GARY STENOIEN, LORRI ANN
STENOIEN a/k/a LORRI ANN
REINKE, and TAMMY SWANSON,
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Sac County, William C. Ostlund,

Judge.


        The plaintiffs appeal from the district court's grant of summary judgment in

favor of the defendants.  **REVERSED AND REMANDED.**



        Thomas D. Prickett of Sherrets, Bruno & Vogt, L.L.C., Omaha, Nebraska,

for appellants.

        Gina C. Badding of Neu, Minnich, Comito & Neu, P.C., Carroll, and

Joseph E. Halbur, Carroll, for appellees.


        Heard by Danilson, C.J., and Potterfield and McDonald, JJ.

**PER CURIAM**

This appeal involves a family dispute over farmland. The plaintiffs—husband and wife, Douglas and Lavola[1] Stenoien, and their daughters, Sheryl Stenoien and Gwendolyn Brown—appeal from the district court's grant of summary judgment in favor of the defendants—Gary Stenoien, son of Douglas and Lavola; Lorri Ann Stenoien, Gary's wife (also known as Lorri Reinke); and Tammy Swanson, Gary and Lorri's daughter. The district court ruled the petition for equitable enforcement of an oral agreement was barred by the statute of frauds and statute of limitations for oral contracts. This action is not barred by either the statute of frauds or the statute of limitations, and we therefore reverse and remand for further proceedings.

**I. Background Facts and Proceedings.**

For purposes of the defendants' motion for summary judgment, the following facts were admitted. Douglas sold 226 acres of farmland to third parties (the Johnsons) on July 13, 1998. A provision of the sale was that Douglas had the right to repurchase the real estate at 1998 prices plus ten percent until July 28, 2003. Before and within six months of July 28, 2003, Stenoien family members Douglas, Lavola, Gary, Tammy, Sheryl, Gwendolyn, and Darryl Stenoien,[2] had meetings and conversations whereby it was agreed Sheryl and Gary would exercise the repurchase option on behalf of the family with the understanding that all the children of Douglas would end up owning the

---

[1] Lavola's name is variously capitalized, sometimes as LaVola. We use the version used in the appellants' brief.
[2] Darryl has not been a party to these proceedings.

real estate in equal shares. The plan was that the cash rent obtained from the repurchased land would pay the mortgage and upon the sale of Douglas Stenoien's Shelby County horse ranch, the remaining balance would be paid.

On July 28, 2003, Douglas and the Johnsons entered into an agreement "that the buy back may be done by Doug Stenoien and or his family including the Gary Stenoien family, Sheryl Stenoien, Tammy Stenoien, Darryl Stenoien and or the Gwen Stenoien family." The date the option could be exercised was extended.

On January 9, 2004, Sheryl signed a real estate mortgage to secure payment for a January 5 loan in the amount of $610,000. Real estate owned by Sheryl adjacent to the property to be repurchased was collateral identified in the mortgage. Present for the loan meeting were Douglas Stenoien, Lavola Stenoien, Sheryl Stenoien, Darryl Stenoien, Gary Stenoien, and Lorri Reinke. The January 5 loan from Farm Credit Services (FCS) was signed by Gary and Lorri.

On January 20, 2004, the 226 acres sold by Douglas was transferred by warranty deed from the Johnsons to Gary D. Stenoien. The deed was recorded.

In March 2010, Gary, Lorri, Sheryl, Lavola, and Douglas signed a rental agreement leasing the acreage to the Johnsons for the crop year 2010-11.

Between 2004 and 2011, there were discussions within the Stenoien family over the balance owing on the mortgage and whether Douglas would sell his Shelby County horse ranch and apply the proceeds to pay off the FCS mortgage. Gary continued to ask if the Shelby County ranch had been sold. On

Thanksgiving 2011 during a family get-together, Tammy indicated she and Gary had obtained a lawyer regarding the farm real estate.

On or about December 1, 2011, Douglas had a conversation with Gary in which he inquired about the loan balance on the property. Gary would not share this information with Douglas. Gary stated it was his land. The two have not spoken since. Shortly after the December 1 meeting, Douglas had the warranty deed pulled and discovered only Gary's name was on the deed. There is no evidence the loan balance was paid in full or that Douglas sold his Shelby County horse ranch to apply to the final balance owed.

A March 20, 2012 letter from FCS to Gary and Lorri sets out the fees for their request to release Sheryl's real estate from the mortgage. On May 8, 2012, FCS released the lien on land owned by Sheryl from the mortgage. Sheryl was given no notice of Gary and Lorri's request or of FCS's partial release.

On September 23, 2012, the plaintiffs filed a petition alleging Gary breached an oral family agreement to repurchase land for the benefit of the family and sought equitable enforcement of the oral agreement. The plaintiffs asked that the court

> requir[e] Gary Stenoien to carry out the agreement by payment of all past and future rents toward the mortgage balance owed to Farm Credit Services and by imposing a constructive trust on the property to insure that title to the property is divided equally between the children of Douglas Stenoien and Lavola Stenoien.

By an amended petition, the plaintiffs added Lorri and Tammy as additional defendants and replied to Gary's counterclaims.

The defendants filed a motion for summary judgment asserting the claims were barred by the statute of frauds, Iowa Code § 622.32(3), and the statute of limitations governing oral contracts, *id*. § 614.1(4) (2013).[3] The plaintiffs asserted neither hindered their claims here.

The district court granted summary judgment in favor of the defendants, and the plaintiffs appeal.

## II. Scope and Standard of Review.

We review a district court's grant of summary judgment for correction of errors of law. Iowa R. App. P. 6.907; *Osmic v. Nationwide Agribusiness Ins. Co.*, 841 N.W.2d 832, 858 (Iowa 2014). Summary judgment is appropriate when the record shows no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Iowa R. Civ. P. 1.981(3). We view the record in the light most favorable to the nonmoving party. *See Bierman v. Weier*, 826 N.W.2d 436, 443 (Iowa 2013). The burden is on the moving party to establish the existence of undisputed facts entitling that party to a particular result under controlling law. *See Hallett Const. Co. v. Meister*, 713 N.W.2d 225, 229 (Iowa 2006).

## III. Discussion.

It is important here to note that the defendants' motion for summary judgment asserted there were no factual disputes and the issue was one of law.[4]

---

[3] Because there have been no substantive changes in either code provision during the relevant time period, all references are to the current 2013 Iowa Code.

[4] The defendants clearly informed the district court the "Joint Affidavit's facts are admitted for purposes of '[the] Motion for Summary Judgment.'" The defendants' attempts to narrow the scope of what was admitted at this stage in the proceedings are

6

As presented to the district court, this motion for summary judgment was grounded upon the defendants' assertion that as a matter of law any agreement between the family members—because it was oral—was barred by the statute of frauds, or in the alternative, was barred by five-year statute of limitations for unwritten contracts. Consequently, we must view the facts asserted, including those in the plaintiffs' joint affidavit, in the light most favorable to the plaintiffs and determine whether the defendants have established they are entitled to judgment as a matter of law.

---

unavailing. As noted in *Troendle v. Hanson*, 570 N.W.2d 753, 756 (Iowa 1997), the client is bound by the acts of the attorney within the scope of the attorney's employment.

> First, the rule that a client must suffer the consequences or reap the benefits of his or her attorney's decisions is a well-established principle of agency law. *See State v. LaMar*, 224 N.W.2d 252, 254 (Iowa 1974) ("It is the general rule that a client is bound by the acts of his attorney within the scope of the latter's authority."); 7 Am. Jur. 2d *Attorneys at Law* § 147, at 196–97 (1997) ("Where the relation of attorney and client exists, the client is bound by the acts of his or her attorney within the scope of the latter's authority . . . ."); *id.* § 157, at 202 (setting forth general rule "that the acts and omissions of an attorney acting within the scope of his or her authority are regarded as the acts of the person he or she represents"). *See generally Dillon v. City of Davenport*, 366 N.W.2d 918, 923 (Iowa 1985) (holding relationship of client and attorney is one of principal and agent). This rule has broad application, permeating *all* aspects of the attorney/client relationship, not just discovery matters. *See, e.g.*, *State ex rel. Miller v. Rahmani*, 472 N.W.2d 254, 258 (Iowa 1991) ("Generally, when a lawyer drafts language on behalf of a client, the representations are attributed to the client."); *City of Des Moines v. Civil Serv. Comm'n*, 334 N.W.2d 133, 135 (Iowa 1983) ("Ordinarily, notice given by an attorney is the act of the client."); *Sims v. State*, 295 N.W.2d 420, 425 (Iowa 1980) ("Ordinarily, . . . the accused is bound by the tactical or strategic decisions made by counsel, even though rising to constitutional dimensions."); *State v. Howell*, 290 N.W.2d 355, 359 (Iowa 1980) ("As a general rule 'admissions of an attorney, whether written or oral, if relevant and material and within the scope of his employment, are admissible against his client.'") (quoting *Suntken v. Suntken*, 223 Iowa 347, 356, 272 N.W. 132, 137 (1937)).

*Troendle*, 570 N.W.2d at 756. Whether the plaintiffs ultimately can convince a factfinder of their assertions is not at issue.

The plaintiffs filed a memorandum of authorities arguing the family agreement fell outside the statute of frauds because part of the contract was in writing and they had partly performed. They also argued the statute of limitations had not run because the earliest the breach of the oral contract could have been discovered was on December 1, 2011, when Gary stated he would give Douglas no further information regarding the payments on the contract.

*A. Five-year statute of limitations.* The defendants admitted the existence of an oral contract for purposes of their motion for summary judgment. Relying on Iowa Code section 614.1(4), the district court concluded the plaintiffs' claim was barred by the statute of limitations for oral contracts. Section 614.1(4) provides that actions "founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery" must be brought within five years "after their causes accrue."[5]

The defendants argue, relying upon *Clark v. Van Loon*, 79 N.W. 88, 89 (Iowa 1899), because "the recording of the deed imparts constructive notice of its contents" the plaintiffs' breach-of-contract cause of action accrued when the warranty deed was recorded in January 2004. The district court was convinced, concluding that even assuming there was a valid oral contract, "Breach of the

---

[5] The plaintiffs on appeal assert a ten-year statute of limitations should apply. Because we conclude the five-year statute of limitations has not run, we need not address this issue. But we agree with the defendants that this argument was neither asserted nor considered in the district court and is thus not properly before us. *See Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 884 (Iowa 2014); *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

oral contract occurred when Gary recorded the deed to the farmland in his name, if not before." We believe this fact-finding is premature at this stage in the proceedings,[6] *see Dallenbach v. Mapco Gas Prod., Inc.,* 459 N.W.2d 483, 486 (Iowa 1990) (noting the existence of an oral contract, as well as its terms and whether it was breached, are ordinarily questions for the trier of fact), but more importantly mischaracterizes and unduly narrows the plaintiffs' claim.

As stated in the petition, the plaintiffs asserted the family agreed "Gary and Sheryl, who were in the best financial condition to purchase the property, would repurchase the property on behalf of the family." The plaintiffs also asserted, "All parties contemplated that the rents from the property would be applied to principal and interest on the loan and *once the loan was paid off that title would be in the children equally*." (Emphasis added.) The plaintiffs further asserted consideration was given on their part and the agreement had been partly performed. In resisting the motion for summary judgment, the plaintiffs argued the "earliest time that the breach could have been discovered[7] in this

---

[6] The motion for summary judgment was filed before discovery was complete. Iowa Rule of Civil Procedure 1.403 does not require a plaintiff to plead specific theories of recovery, *Tigges v. City of Ames*, 356 N.W.2d 503, 507 (Iowa 1984); rather, the petition need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the type of relief sought." "The petition must give 'fair notice' of the plaintiff's claim, a standard met if the petition 'informs the defendant of the incident giving rise to the claim and of the claim's general nature.'" *Ostrem v. Prideco Secure Loan Fund, LP*, 841 N.W.2d 882, 904 (Iowa 2014) (citation omitted); *see also Lee v. State*, 844 N.W.2d 668, 679 (Iowa 2014) (where court again noted Iowa's notice pleading rules and the liberal construction we apply to a prayer for general equitable relief). Generally, "the true nature of the action" becomes clear, and the issues narrowed at the pretrial conference or during the trial before instruction." *Tigges*, 356 N.W.2d at 507.

[7] We observe the use of the term "discovered" is unfortunate and inartful in the context of a contract cause of action. Its use has confused the parties' and the district court's

action was on December 1, 2011" as they were not aware Gary intended to breach the agreement until Gary indicated in December 2011 that the land was his alone. On appeal, the plaintiffs urge that their petition did not limit the theories of recovery to breach of an oral contract. The incident noted in the petition giving rise to the plaintiffs' claim is Gary's statement in December 2011 that he claimed title for himself to the real estate at issue. The plaintiffs contend his statement of this intention, among other things, breached an oral agreement, violated a fiduciary duty, and constitutes constructive fraud.

The general provisions of section 614.1 establish a limitations period that begins to run when the cause of action "accrues." "It is well settled that no cause of action accrues under Iowa law until the wrongful act produces loss or damage to the claimant." *Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.*, 507 N.W.2d 405, 408 (Iowa 1993).

"'A party breaches a contract when, without legal excuse, it fails to perform any promise which forms a whole or a part of the contract.'" *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010) (quoting *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998)). As alleged, the family agreement contemplates action in the future—that title would be placed in the children of Douglas and Lavola equally *after the repurchase loan on the acreage was paid off*. The record before us indicates there has only been a partial release of the mortgage, and viewing the record in the light most

discussions of the various theories or recovery and further supports our decision that summary judgment was not warranted.

favorable to the plaintiffs as we must, the inference arises the loan is still unpaid—and the family agreement still capable of being fulfilled.

Plaintiffs assert Gary indicated his intent to breach the family agreement on December 1, 2011. Viewed in the light most favorable to the plaintiffs, their claim is one of anticipatory breach of an oral agreement. We find guidance in *Glass v. Minnesota Protective Life Ins. Co.*, 314 N.W.2d 393, 396-97 (Iowa 1982). There, the district court granted summary judgment after concluding the five-year statute of limitations had run. Our supreme court found summary judgment was improperly granted on that ground:

> The statute of limitations for unwritten contracts is five years. The trial court sustained the motion for summary judgment on the additional ground that this defense was established in the summary judgment proceeding. Defendant contended and the court agreed that the five-year period commenced with defendant's 1973 letter stating that renewal commissions would be paid for only five years. Because the suit was brought more than five years later, defendant argued it was barred by the statute.
>
> Plaintiff asserts that the 1973 letter was merely an anticipatory breach of the contract and that the actual breach did not occur until defendant stopped paying the commissions at the end of the five-year period. We believe plaintiff is correct. Because defendant's letter was essentially a statement of intention to cease performance in five years, it was anticipatory in nature.
>
> When anticipatory breach occurs, the other party has "an immediate right of election either to continue to assert his strict contract rights or to accept the renunciation and sue upon that as a distinct cause of action." A renunciation authorizes but does not require the nondefaulting party to treat the contract as broken. It "becomes a wrongful act only as, if, and when the promisee elects to treat it as such."
>
> *If no action is brought on the anticipatory breach, the statute of limitations does not begin to run until the actual breach occurs.*
>
> Plaintiff elected to wait until defendant actually ceased performance in the present case. He commenced the action within one year of that date. Therefore the action was not barred by the five-year limitations period. The trial court erred in entering summary judgment on the statute of limitations ground.

*Glass*, 314 N.W.2d at 396-97 (emphasis added). Unlike *Glass*, the plaintiffs have elected to bring their action on Gary's asserted anticipatory breach. Because the breach alleged is anticipatory, no statute of limitations had begun to run. *Id.* at 397. The district court erred in concluding a cause of action for breach of an oral contract was barred by the five-year statute of limitations. *See id.*

*B. Statute of frauds.*

The district court also ruled summary judgment was appropriate because the statute of frauds made oral proof of contracts concerning transfers of land incompetent. We conclude the district court's reliance on this evidentiary rule was misplaced.

Under the statute of frauds set forth in Iowa Code section 622.32, evidence of certain types of contracts is inadmissible unless it is "in writing and signed by the party" sought to be charged. The statute "does not void such oral contracts," but "makes oral proof of them incompetent." *Pollmann v. Belle Plaine Livestock Auction, Inc.*, 567 N.W.2d 405, 407 (Iowa 1997).

"One type of contract included within the statute is a contract creating or transferring an interest in real estate other than leases for a term less than one year." *Kolkman v. Roth*, 656 N.W.2d 148, 151 (Iowa 2003). But two exceptions exist. *Id.* "First, where a party has rendered part performance, the statute of frauds does not apply." *Pollmann*, 567 N.W.2d at 407 (citing *Gardner v. Gardner,* 454 N.W.2d 361, 363 (Iowa 1990), and *Recker v. Gustafson*, 279 N.W.2d 744, 748-49 (Iowa 1979)). "Second, proof of the elements of promissory estoppel will

also remove an oral contract involving an interest in real estate from the statute of frauds." *Id.*

*1. Part performance.* The alleged contract asserted by plaintiffs Douglas, Lavola, Sheryl, and Gwendolyn is somewhat analogous to the oral agreement addressed in *Gardner*. *See* 454 N.W.2d at 362-63. In 1985, Harry Gardner was heavily indebted to a bank. *Id.* at 362. The bank refused to lend him any more money and called the loan due. *Id.* According to Harry's brothers, Harry discussed his financial problems with them and their sister and solicited from them their remainder interest in real estate in which Harry had a life estate. *Id.* Harry told them that he would attempt to refinance with another bank and, if he failed to do so, he would reconvey the remainder interest to them. *Id.* at 362-63. The brothers and sister gave Harry a quitclaim deed. *Id.* at 363. When Harry's application for a loan was denied, Harry refused to reconvey the remainder interest. *Id.* His brothers then filed an action to compel reconveyance. *Id.* at 362. The district court relied upon the statute of frauds and ruled the evidence of the oral agreement was inadmissible. *Id.* at 363. Our supreme court reversed:[8]

> Under our statute of frauds, it is well established that a party who partially performs under the agreement may avoid the impact of the statute of frauds and introduce evidence of the oral contract. *See, e.g., Recker*, 279 N.W.2d at 749; *Gilbert v. Plowman*, 256 N.W. 746, 747-48 (Iowa 1934). This is also in accordance with the general rule. *See* 73 Am. Jur. 2d *Statute of Frauds* § 397, at 21-23 (1974). The brothers in this case performed their part of the alleged oral agreement by conveying their remainder interests in

---

[8] The court also observed: "The brothers also contend that Harry admitted the oral contract . . . . Parol evidence establishing an agreement for the creation of an interest in real estate may be admitted where the agreement is established by oral evidence of the adverse party." *Gardner*, 454 N.W.2d at 363.

the land. This was sufficient performance to take the alleged oral agreement from the operation of the statute of frauds.

*Id.*

There is a genuine issue of material fact whether part performance exists in the case before us. The plaintiffs assert the following acts of part performance of the contract: (1) one of the Stenoien children exercised the option to repurchase, (2) Sheryl partially performed the agreement by allowing her land to act as security for the financing obtained to repurchase, and (3) some of the rent from the repurchased land was applied toward the loan by Gary. The district court rejected the claim of part performance, but in doing so noted "other explanations" and "multiple explanations" could exist for the "alleged acts of partial performance." The plaintiffs, however, are entitled to every legitimate inference. *Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000) ("We also indulge in every legitimate inference that the evidence will bear in an effort to ascertain the existence of a fact question."). One explanation for Sheryl's willingness to encumber her land with a lien was to facilitate the purchase of the land at issue pursuant to the oral agreement. Thus, the "other explanations" are material issues of fact precluding summary judgment.[9]

---

[9] Although we have addressed the issue of partial performance, we question the ability of a party to stipulate to the existence of facts supporting an oral agreement and yet rely upon the statute of frauds as a defense. *See* Iowa Code § 622.34 (providing enforcement of an oral contract shall not be prevented if not denied in pleadings); *Johnson v. Ward*, 265 N.W.2d 746, 748 (Iowa 1978) (concluding a defendant's failure to deny the contract operates as a waiver of the statute of frauds defense and an admission would prove the contract). We acknowledge, however, the defendants in this action raised the statute of frauds in their amended answer and stipulated to facts supporting the existence of an oral agreement solely for the purpose of the motion for summary judgment.

*2. Equitable estoppel.* The plaintiffs also contend the defendants should be equitably estopped from asserting either the statute of frauds or the statute of limitations.[10] The Iowa courts have recognized promissory estoppel as a "circumstance" to avoid the statute of frauds. *Kolkman*, 656 N.W.2d at 153. "Promissory estoppel is broader than part performance and ultimately utilizes special standards to determine whether injustice can be avoided by enforcing a promise otherwise unenforceable under the statute of frauds." *Id.* at 154. The defendants assert the claim fails because strict proof of the elements of promissory estoppel is required. *See id.* at 156. This may be so, but the record before this court presents a factual dispute between the parties concerning the existence of the claim of estoppel. *See Steinbach v. Cont'l W. Ins. Co.*, 237 N.W.2d 780, 783-84 (Iowa 1976).

> When a motion for summary judgment seeks judgment on the basis that the plaintiff's claim does not provide relief as a matter of law, the plaintiff is only required to resist the motion by responding to those elements of the claim for relief under attack. *See* Iowa R. Civ. P. 1.981(3), (5). Any other approach could deprive the nonmovant of the opportunity provided under the rules of summary judgment to address the actual grounds for summary judgment. *Id.* Similarly, a party who has successfully moved for

---

[10] The defendants argue the plaintiffs have not preserved the issue with respect to the statute of limitations, but having found the statute of limitations does not bar the plaintiffs claim, we need not discuss the matter further. But we note our case law recognizes a defendant can be estopped from "asserting the statute [of limitations] as a defense when it would be inequitable to permit the defendant to do so." *Christy v. Miulli*, 692 N.W.2d 694, 701 (Iowa 2005).

> To successfully establish equitable estoppel, the plaintiff has the burden to show by clear and convincing evidence: (1) The defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representations; and (4) the plaintiff did in fact rely upon such representations to his prejudice.

*Hook v. Lippolt*, 755 N.W.2d 514, 524-25 (Iowa 2008) (citation and internal quotation marks omitted).

summary judgment may not raise different grounds on appeal to support summary judgment than those raised before the district court. *See DeVoss v. State,* 648 N.W.2d 56, 62–63 (Iowa 2002) (recognizing only grounds urged in the district court are considered on appeal).

*Castro v. State*, 795 N.W.2d 789, 794 (Iowa 2011).[11]

The defendants have failed to prove they are entitled to summary judgment as argued below. We therefore reverse and remand to the district court for further proceedings.

**REVERSED AND REMANDED.**

Danilson, C.J., and Potterfield, J., concur; McDonald, J., dissents.

---

[11] The summary judgment record reflects that Gary represented that he consented to the family agreement. The plaintiffs did not know until on or about December 1, 2011, that Gary did not intend to comply with the agreement. Although the deed only identified Gary as the owner, he remained capable of fulfilling the agreement. He continually asked if the Shelby County ranch had been sold. The evidence shows the plaintiffs relied upon Gary's representations to the extent that Sheryl permitted her land to be mortgaged to facilitate the land purchase.

**MCDONALD, J.** (dissenting)

The plaintiffs cannot prove the existence of a contract because "no evidence" of "contracts" "for the creation or transfer of any interest in lands" "is competent, unless it be in writing and signed by the party charged or by the party's authorized agent." Iowa Code § 622.32. There is no such writing here. None of the recognized exceptions to the general rule are applicable here. As such, the plaintiffs' evidence is not competent and cannot, as a matter of law, create a genuine issue of fact for trial. Accordingly, I respectfully dissent.

Before addressing the exceptions to the statutes of frauds, I begin with the end. Even assuming the plaintiffs' evidence of a contract is competent, the plaintiffs' contract claim fails as a matter of law. "A court cannot enforce a contract unless it can determine what it is." *Davis v. Davis*, 156 N.W.2d 870, 876 (Iowa 1968). "In order to be binding, an agreement must be definite and certain as to its terms to enable the court to give it an exact meaning." *Id.* Further, the existence of an oral agreement for the creation or transfer of any interest in lands and the terms of any such agreement "must be established by a preponderance of the clear, satisfactory and convincing evidence." *Peterson v. Petersen*, 355 N.W.2d 26, 29 (Iowa 1984). The requirement that an oral contract in lands be proved by clear, satisfactory, and convincing evidence protects against the evils the statute of frauds is intended to prevent:

> An oral agreement to transfer an interest in land must be established by more than a mere preponderance of evidence. Because enforcement of such an agreement without convincing evidence would tend to frustrate the purpose of the statute of frauds, a greater quantum of proof is required.

> The statute of frauds exists for the prevention of fraud and perjury; and the means that it adopts is to refuse enforcement unless the contract is evidenced by a signed document. When a plaintiff is asking enforcement without having such a document, there is always the possibility that he is attempting to effectuate the very kind of fraud that the statute was passed to frustrate. Therefore, before decreeing enforcement, in disregard of the statutory prohibition, the court must be thoroughly convinced that the oral contract was in fact made as alleged.

*Id. at* 28 (citation omitted).

The plaintiffs state the oral agreement was as follows: "Sheryl Stenoien and Gary Stenoien would proceed to exercise on behalf of the family the repurchase option with the understanding that all the children of Douglas V. Stenoien would end up owning the property in equal shares." Absent from the alleged agreement are the material terms of the agreement. Would Sheryl and Gary gift the property to the others? Or, instead, would the children have to purchase their respective share of the property? If so, at what price? Would only some of the children be required to purchase their respective share? Were the children granted only a right of first refusal to purchase their respective share of the property if Sheryl and Gary wanted to sell the property outside the family? If so, at what price? When was the purported sale or transfer to take place? What happened in the event Sheryl and Gary did not jointly exercise the option to purchase the property as is the case here? The rhetorical questions illustrate the central defect in the plaintiffs' claim: there is not clear, satisfactory, and convincing evidence of a definite and certain agreement capable of judicial enforcement. *See, e.g., id.* at 28-31 (declining to address statute of frauds issue and instead concluding as a matter of law the plaintiff had not created a triable

issue of fact on whether there was a contract); *Tri-States Inv. Co. v. Henryson*, 179 N.W.2d 362, 363-65 (Iowa 1970) (finding plaintiff not entitled to specific performance where the terms of an option agreement were indefinite and uncertain as to time and manner of payment); *Pazawich v. Johnson*, 39 N.W.2d 590, 592-93 (1949) (finding trial court erred in ordering specific performance where there "arises many questions essential to a complete real estate sale" such as "what are the conditions as to payment," "what kind of conveyance is contemplated," etc.); *Deck v. Betka*, No. 12-0822, 2013 WL 99123, at *3 (Iowa Ct. App. Jan. 9, 2013) (affirming grant of summary judgment where plaintiff could not establish terms of alleged oral agreement); *Stockbauer v. Schake*, No. 09-1720, 2010 WL 3155218, at *3 (Iowa Ct. App. Aug. 11, 2010) (agreeing with district court no valid contract existed where agreement "contained no essential terms and details such as the purchase price of the real estate, the monthly payment amounts, and the number of payments"); *Estate of Stinson v. Stinson*, No. 04-1311, 2005 WL 1225434, at *5 (Iowa Ct. App. May 25, 2005) (declining to address statute of frauds where party claimed decedent wanted property transferred to him and holding that even if all evidence was admissible it "falls short of proving the terms and conditions of the contract the executor claims should be performed" and the alleged contract leaves "too much to speculation"). *Branstad v. Garland*, No. 00-0132, 2001 WL 709330, at *3-5 (Iowa Ct. App. June 13, 2001) (finding it unnecessary to determine whether estoppel exception to statute of frauds applied because plaintiff failed to prove existence of oral contract due to lack of essential terms).

Setting aside the terms of the contract for the moment, the district court correctly granted summary judgment in favor of the defendants on the statute of frauds. To successfully resist summary judgment a party must set forth specific, material facts, supported by competent evidence, establishing the existence of a genuine issue for trial. *See* Iowa R. Civ. P. 1.981(5); *Bitner v. Ottumwa Cmty. Sch. Dist.*, 549 N.W.2d 295, 299 (Iowa 1996). "A fact is 'material' if it will affect the outcome of the suit, given the applicable law." *Parish v. Jumpking, Inc.*, 719 N.W.2d 540, 543 (Iowa 2006). An issue of fact is "genuine" if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *See Fees v. Mut. Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992). The statute of frauds provides the plaintiffs' evidence in support of their resistance to summary judgment is not "competent" to establish a disputed issue of fact, as a matter of law, unless an exception to the statute of frauds applies. *See* Iowa Code §§ 622.32; 622.33. Iowa Code section 622.33 sets forth two exceptions to the statute of frauds as it relates to contracts in lands. Neither of them is applicable here.

The first exception removes oral agreements relating to lands from the domain of the statute "where the vendor of a real estate contract has received 'the purchase money, or any portion thereof, . . . or when the vendee, with the actual or implied consent of the vendor, has taken and held possession of the premises under and by virtue of the contract.'" *Kolkman*, 656 N.W.2d at 152 (quoting Iowa Code § 622.33). This is a limited exception. The statutory language "codifies the ancient doctrine of part performance, and permits the

statute of frauds to be avoided where a party has rendered the type of part performance *described in the statute*." *Id.* (emphasis added). In addition, "[a]ny conduct, acts, or circumstances offered to show part performance must refer exclusively and unequivocally to the contract." *Davis v. Roberts*, 563 N.W.2d 16, 20 (Iowa Ct. App. 1997).

The plaintiffs have not established part performance as defined in the statute or come forth with evidence from which a finder of fact could find part performance as defined in the statute. The alleged agreement between Gary and the plaintiffs (not the agreement between Gary and the Johnsons, an agreement to which the plaintiffs are not parties) is "the children of Douglas V. Stenoien would end up owning the property in equal shares." Plaintiffs have not identified any statutorily recognized part performance that refers exclusively and unequivocally to the alleged agreement between the plaintiffs and Gary—Gary exercising the option to purchase the land, Sheryl's mortgage, and Gary's collection of rent are not statutorily recognized exceptions to section 622.32. The facts upon which the plaintiffs rely are thus immaterial. *See Parish*, 719 N.W.2d at 543.

Even assuming the parties' alleged agreement included the term that Gary would purchase the property from the Johnsons, the evidence does not generate a genuine issue of material fact. Gary paid for the property at issue, and he received title to and possession of the property in return. Gary rented the property and used the proceeds to pay his indebtedness to purchase the property. This conduct does not "exclusively and unequivocally" refer to the

alleged contract involving the plaintiffs. *See Davis*, 563 N.W.2d at 20. The most logical inference to be drawn from the facts that someone purchased a property, took title to the property, recorded the deed giving notice of title to the property, rented the property, and then used income generated from the property to pay the loan incurred to purchase the property is the purchaser intended to purchase the property for his benefit. The inference that those facts somehow evidence an agreement for Gary to give, sell, or transfer the property to his siblings is not reasonable. In sum, there is no "genuine" issue of "material" fact in dispute as to part performance. *See, e.g., Stonewall v. Stonewall*, No 98-0728, 1999 WL 668741, at *3 (Iowa Ct. App. Aug. 27, 1999) (holding plaintiffs did not prove part performance exception where payment of funds could have been made pursuant to rental agreement instead of pursuant to alleged oral purchase agreement).

The second circumstance that will remove an oral agreement regarding real estate from the domain of the statute of frauds is "derived from the concluding language of section 622.33, which makes the statute inapplicable under 'any other circumstance which, by the law heretofore in force, would have taken the case out of the statute of frauds.'" *Kolkman*, 656 N.W.2d at 152 (quoting Iowa Code § 622.33). Our courts "have interpreted this language to mean that the doctrine of promissory estoppel is available to remove an oral real estate contract from the statute of frauds." *Id.* The elements of promissory estoppel are as follows:

> (1) a clear and definite promise; (2) the promise was made with the promissor's clear understanding that the promisee was seeking assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his or her substantial

detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise.

*Id.* at 156. "We require strict proof of all of the elements," including "strict proof of a promise that justifies reliance by the promisee," and "strict proof the reliance inflicted injustice that requires enforcement of the promise." *Id.* Strict proof is required to ensure the exception does not render the statute of frauds a nullity. *Id.*

There is no competent evidence creating a triable issue of fact on any element of this exception, let alone strict proof on each of the elements. As stated above, the plaintiffs have not identified a "clear and definite promise." They have not established they relied on the alleged promise. There is no evidence showing what actions the plaintiffs took in reliance on Gary's alleged promise. There is no evidence showing what actions the plaintiffs forewent in reliance on Gary's promise. There is no evidence of the substantial detriment they suffered. There is also no evidence of an injustice suffered. In sum, the argument wholly fails. *See, e.g., Byl v. Van Beek*, No. 11-0802, 2012 WL 299529, at *2-3 (Iowa Ct. App. Feb. 1, 2012) (affirming grant of summary judgment where plaintiff could not establish terms of promise and injustice and stating the exception must be applied strictly otherwise the exception would swallow the rule); *Callahan Constr., Inc. v. Weidemann*, No. 05-1207, 2006 WL 1750375, at *4-5 (Iowa Ct. App. June 28, 2006) (affirming summary judgment and concluding incurring costs and marketing expenses was not sufficient to establish genuine issue of disputed fact sufficient to preclude summary judgment on promissory estoppel theory).

Independently, it is not even clear that plaintiffs argue that promissory estoppel applies here. In their brief, the plaintiffs argue only that their argument regarding equitable estoppel as applied to the statute of limitations should be incorporated by reference into their discussion of the statute of frauds. They make no argument regarding any of the elements of promissory estoppel. Nor do they make any argument or cite to any authority that equitable estoppel, as applied in the context of the statute of limitations, would apply with the same force or rationale in this context. I conclude that it does not and that the statute of frauds applies here.

In concluding the plaintiffs have created a triable issue of fact and should be allowed to proceed to trial, the majority undermines legislature's purpose in codifying the statute of frauds:

> This attitude (to extend exceptions to the statute of frauds) has given way gradually, and from quite an early period the statute of frauds has frequently been spoken of as a most beneficial statute which should be liberally construed to effect its object. The wisdom of the statute is a matter within the control of the legislature, not the judiciary, but it has been said to be justified by long experience. The tendency has long been to restrict rather than to enlarge and multiply the cases of exceptions to the statute, and the right to invoke the statute as a defense is no longer regarded with disfavor. The courts should not be tempted to turn aside from its plain provisions merely because of the hardship of the particular case. They should not be controlled by the consequences following upon an application of the statute, or deem obnoxious a law which the legislature has placed in the statutes and allowed to remain for many years, and they cannot disregard the statute. They certainly should refuse to sanction such a construction as would permit the evils that the statute was intended to prevent.

*Warder & Lee Elevator, Inc. v. Britten*, 274 N.W.2d 339, 345-46 (Iowa 1979) (Reynoldson, C.J., dissenting) (quoting 73 Am. Jur. 2d *Statute of Frauds* § 511 (1974)). Allowing this matter to proceed to trial on the grounds the owner of the

property rented his property and used the proceeds to pay a purchase money obligation greatly undermines the statute of frauds and greatly undermines the tranquility of title in real property.

For the foregoing reasons, I respectfully dissent. I would affirm the judgment of the district court.